[Crim. No. 7935. Second Dist., Div. Four. Apr. 19, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. HELEN TERRY, Defendant and Appellant.

Helen Terry, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

THE COURT.—By information filed by the district attorney Helen Terry was charged in Count I with burglary in violation of section 459 of the Penal Code in that on or about September 27, 1960, she entered the store of J. C. Penney Company in Pomona with the intent to commit theft. In Count

II she was charged with committing a theft, at that time and in that store, of men's suits of a value in excess of two hundred dollars. In Count III she was charged with the crime of petty theft with a prior conviction of petty theft in violation of section 667 of the Penal Code at the same time and place. She was also charged with three prior offenses: (1) a violation of section 11500 of the Health and Safety Code on August 28, 1951; (2) the crime of burglary on July 28, 1952; and (3) the crime of petty theft with a prior conviction of petty theft on August 11, 1953.

Defendant was represented by the public defender and pleaded not guilty and denied the prior convictions. Defendant personally and all counsel waived trial by jury. The cause was submitted on the testimony contained in the transcript of the proceedings at the preliminary hearing in the municipal court with each side reserving the right to offer additional evidence.

At the commencement of the trial the judge directed that the record show that pursuant to the stipulation he had read the transcript of the testimony taken at the preliminary hearing. Additional evidence was offered by both the People and the defendant. Defendant testified in her own behalf. She was found guilty on Counts I and III. Count II was dismissed on motion of the district attorney. The third prior charged, that of petty theft with a prior conviction of petty theft, a felony, was found true. No findings were made with respect to the additional prior convictions. Probation was denied and defendant was sentenced to state prison for the term prescribed by law with respect to each count, with sentences as to each count to run concurrently with each other and concurrently with the sentence which defendant was currently serving in the county jail.

Defendant applied for appointment of counsel to assist her on the appeal. This court, having made an independent investigation of the record and having determined it would be neither advantageous to defendant nor helpful to the court to have counsel appointed, denied the application whereupon defendant prosecutes this appeal in propria persona. Defendant was notified and given ample time to file a brief. None has been filed, however, we have given the appeal full consideration.

There was evidence of the following facts:

On September 27, 1960, defendant, accompanied by a male and a female companion, entered the Pomona store of

the J. C. Penney Company at 5 p. m., approximately half an hour before its regular closing time. They went to the men's clothing department and after being in there about five minutes defendant went into one of two adjoining dressing rooms purportedly to fix a broken brassiere strap. A woman clerk sent for one of the department men, Vincent Bohleen, who went over to the dressing room and pulled the curtain aside. Defendant was working with her brassiere, the top button of her blouse being open. Mr. Bohleen testified that she was also working with her skirt and slips because he could see her "bouffant slips" and that he could see them showing below her skirt. He looked on the floor, on the single clothes hook in the dressing room and under the lone chair in the room but saw no articles of any kind, specifically no coat hangers or clothing. There was nothing on the floor. He noted that defendant had a large open-top handbag. He demanded that defendant lift her skirt which she refused to do. He then directed that the female clerk enter the dressing room and search her. He closed the curtain and stood outside. Defendant told the female clerk that she was embarrassed to be searched by her, that she was menstruating at the time, and told the female clerk if she would step outside defendant would disrobe. The female clerk then joined Mr. Bohleen outside the dressing room. After a few moments defendant called out that she decided she was not going to disrobe.

When Mr. Bohleen first observed the woman in the dressing room he stated her clothing appeared to be puffed out around the waist, but that when he subsequently observed her as she emerged from the dressing room this puffed-out appearance had gone. As she emerged he noted some clothing folded under the chair which had not been there previously. These were four men's suits which were subsequently identified. They were folded on hangers and were all in one bundle. At that time he instructed one of the clerks to go and call the police. Defendant told him that she would like to rearrange her clothing; that she was having her period and was having trouble. Mr. Bohleen then closed the curtain on her again.

Mr. Bohleen indicated that during the discussion with defendant a man, later identified as the male companion of defendant, emerged from the adjoining dressing room. He was seen to leave the store very hurriedly and with his clothes in a state of disarray. This man was followed by one of the clerks for a distance of approximately three blocks and upon

observing that he was being followed the man broke into a run and disappeared. He was never apprehended.

As defendant emerged from the dressing room Mr. Bohleen attempted to restrain her and during the process was either knocked or fell to the floor, still maintaining his hold on defendant's arm.

In the meantime, defendant's woman companion approached where defendant was struggling with Mr. Bohleen and defendant directed the female companion to take her bag and "get it out of here." The female companion did this and she left the store after being advised by one of the clerks that the male companion had already gone leaving her "holding the sack." The female companion, Hazel Henderson, testified that when their male companion hurriedly left the store he handed her a slip of paper and the keys to the automobile in which the three had been driving. She indicated to him she did not want to drive and gave him back the keys. She retained the slip of paper, however, which was introduced in evidence and consisted of a list of men's suits identified by sizes and color of materials. Miss Henderson stated that she placed the slip of paper in the bag handed to her by defendant and went to the car in which they had been driving and deposited the bag in the automobile.

After defendant had given the handbag to her companion she ceased struggling and remained until the police were called. One of the clerks of the store identified the automobile which the three persons had parked before approaching the store. A search of this automobile revealed defendant's bag in which the slip of paper had been placed by Miss Henderson. In this bag were three girdles testified to by police officers as being of the type employed by shoplifters; that they are used under the outer clothing and have hooks on them so that objects being stolen can be suspended from them and covered by the outer clothing.

Also located in the automobile were two duffel bags in which there were four men's suits bearing the labels "Black's." These suits were subsequently identified by a sales clerk for Black's Men's Wear, San Bernardino, as being the property of Black's. He pointed out that no alterations had been made in the suits, no cuffs had been placed on the trousers and the tags customarily removed from the garments upon sale were still present on the garments. He also testified that he recalled defendant and her two companions entering the store on the 27th of September; that the man had inquired concerning

several suits and had gone into the dressing room twice to try them on; that the two women left the store shortly before the man; and that no purchases were made by any of them in the store.

One of the police officers testified that in a conversation with defendant she asked him to get her sweater or jacket from the car and her purse; that she wanted to check it. The officer procured them from the automobile in question and asked her if that was the sweater she wanted and she said yes. He also gave her the purse which she checked in his presence.

At the conclusion of the trial, counsel for defendant made a motion to dismiss the burglary charge on the ground there was no showing of the required intent. The court properly denied the motion. While the girdle shoplifting devices were not upon the person of defendant, they were found in her bag and under the chain of circumstances related above it was a logical inference for the judge to draw that defendant had removed both the clothing and the girdle from her person before her arrest and had arranged for the removal of the bag with the telltale girdles by her female companion. The presence in the automobile used by defendant and her companions of the other articles of clothing which the evidence showed had been removed from another store earlier that day also supported the conclusion of the court that defendant had entered the store with the intent to commit theft. (*People* v. *Corral*, 60 Cal.App.2d 66, 71 [140 P.2d 172].)

 While the existence of the specific intent charged at the time of entering a building is necessary to constitute burglary in order to sustain a conviction, this element is rarely susceptible of direct proof and must usually be inferred from all of the facts and circumstances disclosed by the evidence. (*People* v. *Smith*, 84 Cal.App.2d 509, 511-512 [190 P.2d 941].) Where the evidence is sufficient, as it was in this case, the trial court may reasonably find by inference that such intent existed on the part of defendant. Such a finding will not be disturbed on appeal. (*People* v. *Swenson*, 28 Cal.App. 2d 636 [83 P.2d 70].)

Defendant denied that she had either entered the store with intention to commit theft or that while there had attempted to steal anything. She asserted that her purpose in going into the dressing room had been to fix her brassiere; that she had refused permission to be searched by the store clerks because of embarrassment but asserted that if they would have called the police she would have had no objection to being searched

by a police matron. She denied ownership of the girdles found in her bag. She admitted having been with her companions in Black's in San Bernardino before proceeding to the Penney store in Pomona. She denied knowing anything about the clothing found in the automobile which had been taken from the store in San Bernardino.

The evidence clearly supports the finding as to defendant's guilt. There was no error in the trial. The appeal is entirely without merit.

The judgment is affirmed.