[Crim. No. 10991. First Dist., Div. Three. Jan. 10, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
MILTON EARL, Defendant and Appellant.

## COUNSEL

Triplett & Pruett and John R. Triplett for Defendant and Appellant.
Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, John T. Murphy and Karl S. Mayer, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BROWN (H. C.), J.**—Appellant appeals from his conviction of first degree murder for which he was sentenced to death and from the convictions of two counts of burglary in the first degree and attempted kidnaping. The automatic appeal to the Supreme Court was transferred to the Court of Appeal by virtue of the decision of *People* v. *Anderson,* 6 Cal.3d 628 [100 Cal.Rptr. 152, 493 P.2d 880], holding the death penalty to be unconstitutional.

The killing occurred when appellant was stopped by a private security guard for suspicion of shoplifting. The first degree murder conviction stemmed from the felony-murder rule of Penal Code section 189. Appellant attacks the conviction of burglary on the ground that there was no substantial evidence that he had formed the intent, or was capable of forming the intent, to steal when he entered the store. He also challenges the use of the felony-murder rule when the burglary upon which it is based is one not inherently dangerous to human life. In addition, he contends that the evidence was insufficient to convict him of the second count of burglary; that the court abused its discretion in allowing him to stand trial in leg irons; that the court did not hold an adequate hearing on his request to discharge the public defender. It is concluded that the appellant should not prevail in his argument.

██ The first contention of error is that the evidence was not sufficient to establish that appellant entered the AGE Department Store with the specific intent to commit theft.

A person who enters a store with the intent to commit theft is guilty of burglary. (Pen. Code, § 459; see *People* v. *Deptula,* 58 Cal.2d 225, 228 [23 Cal.Rptr. 366, 373 P.2d 430].) "While the existence of the specific intent charged at the time of entering a building is necessary to constitute burglary in order to sustain a conviction, this element is rarely susceptible of direct proof and must usually be inferred from all of the facts and circumstances disclosed by the evidence." (*People* v. *Terry,* 202 Cal.App.2d 604, 608 [20 Cal.Rptr. 915].) Appellant's argument that it would be reasonable

to find that appellant entered the AGE store only to browse refers to a question for the trier of fact. Further, it is belied by the evidence. From the fact that appellant had been taking drugs and had no money on his person, the jury could have inferred that he was in need of money. He entered the store without either money or a membership card. The activities of appellant and his companion Terrell at the United Parcel Service office and the Tapp Service Station, as well as their actions in the AGE store suggest a prearranged plan to steal. While commission of theft in a store is insufficient alone to establish a prima facie case of burglary (*People* v. *Barry,* 94 Cal. 481 [29 P. 1026]), taken with the other circumstances of this case, the theft in this case makes clear that if appellant was able to form any intent upon entering the store, it was an intent to steal.

Appellant, however, also argues that the evidence shows that because of the drugs he took he was incapable of forming the intent to steal at the time of entry. While it is recognized that the only experts testifying as to appellant's capacity to form the requisite intent were of the opinion that he had not the capacity to do so, their opinions rested on the amount and kind of drugs appellant told them he took. There was little corroborative evidence available. While it is noted that the police themselves failed to obtain and preserve the best evidence available at the time of the offense by failing to take a blood sample or call a medically trained observer, the jury was alerted to this omission in the instructions. The jury might reasonably have inferred that appellant's appearance and actions at the time were not indicative enough of drug intoxication to suggest the need of a test. It is also noted that appellant's actions during the events in question were not inconsistent with behavior of persons acting with unimpaired capacity. He was able to lift the mod-watch and don the pair of stolen pants under his own pants. He had a rational motive to kill the guard to thwart his capture. He was able to make relevant decisions in his efforts to escape, such as his attempt to commandeer a moving vehicle. The fact that appellant's crimes were not "bizarre" crimes serves to distinguish his argument from that presented in cases in which the Supreme Court found diminished capacity as a matter of law. (*In re Kemp,* 1 Cal.3d 190, 195 [81 Cal.Rptr. 609, 460 P.2d 481]; compare *People* v. *Bassett,* 69 Cal.2d 122, 124 [70 Cal.Rptr. 193, 443 P.2d 777] [18-year-old defendant executed his mother and father]; *People* v. *Nicolaus,* 65 Cal.2d 866, 869 [56 Cal.Rptr. 635, 423 P.2d 787] [defendant killed his three children]; *People* v. *Goedecke,* 65 Cal.2d 850, 852 [56 Cal. Rptr. 625, 423 P.2d 777, 22 A.L.R.3d 1213] [youth of 18 killed his father, mother, sister and brother].)

The argument of defense counsel to the jury included reference to appellant's evidence of diminished capacity to harbour intent to steal, and the

trial court instructed the jury on the defense. In the face of the reasonable inferences that could be drawn from the total circumstances, it cannot be said that as a matter of law appellant lacked the specific intent to steal when he entered the store. (See *People* v. *Lynch,* 60 Cal.App.2d 133, 138-139 [140 P.2d 418].)

Appellant next contends that the evidence was insufficient to support his conviction of the burglary of Tapp's Service Station.

John Tapp, the proprietor of the station, testified that he had loaded a gun and placed it inside the desk drawer in the service station office at 2 p.m. He observed a black youth leaving the service station office at about 4 p.m. with something in his hand. No one else had been in the station during this interval. Appellant and Terrell had been observed walking in the direction of the service station from the United Parcel Service office within the hour preceding 4 p.m. Appellant had the gun in the AGE Department Store shortly after 4 p.m.

From the above evidence, the jury could reasonably infer that either Terrell or appellant took the gun from the desk. Even if it were Terrell who did so, appellant's possession of the stolen property and the evidence of their joint activities during the afternoon would support appellant's conviction on the theory of aiding and abetting. (Pen. Code, § 31; *People* v. *Tyler,* 258 Cal.App.2d 661, 667 [65 Cal.Rptr. 907].)

Appellant's argument that there was no evidence of an intent to steal upon entry of the service station is faulty. ■ Appellant equates the failure to negate every conceivable intent upon entering with the failure to prove the existence of an intent to steal. The prosecution need only advance evidence from which a jury may reasonably infer entry with intent to steal to withstand reversal for failure of proof. (See *People* v. *Terry, supra,* 202 Cal.App.2d 604, 608.) ■ This evidence was present in the fact that the appellant or Terrell had no money upon entering the service station; the person entering made no attempt to contact the proprietor for assistance of any kind; the gun was within a closed drawer not open to the public; the gun was taken. The evidence clearly supports the finding as to entry with intent to steal.

Appellant contends that the felony-murder rule should not apply here because shoplifting is a crime which would not have been a burglary as defined in the Penal Code at the time that section 189 was enacted. At that time, 1872, Penal Code section 459 required that the burglary occur in the nighttime and involve the entry of a "house, room, apartment, or tenement, or any tent, vessel, water craft, or railroad car." As thus defined, burglary

was a crime which could be said to be inherently dangerous to human·life. Appellant argues that it is this element of danger which connects all crimes in section 189, i.e., arson, rape, robbery, mayhem, or lewd acts upon a child. The Legislature would not have intended to include this act of shoplifting which is a property crime not ordinarily presenting any danger of physical harm to people.

We recognize that the Supreme Court has recently taken a restrictive view in the application of the second degree felony-murder rule. (See *People* v. *Satchell,* 6 Cal.3d 28 [98 Cal.Rptr. 33, 489 P.2d 1361]; *People* v. *Lopez,* 6 Cal.3d 45 [98 Cal.Rptr. 44, 489 P.2d 1372].) In these cases, the Supreme Court discussed the reasons for limiting the felony-murder rule to only those felonies which are "inherently dangerous." In *People* v. *Phillips,* 64 Cal.2d 574, 583 [51 Cal.Rptr. 225, 414 P.2d 353], the Supreme Court had disapproved the use of the doctrine in a case where the underlying felony was grand theft. The situation thus presented is that a person who enters a store intending to shoplift can be convicted of first degree murder if he kills while escaping, whereas a person who aimlessly enters the store and later steals cannot be convicted even of second degree murder unless the prosecution can prove the element of malice and intent to kill. To hinge such important matters of proof upon the factor of when the defendant makes up his mind to take the merchandise seems illogical.

The Attorney General correctly points out that the cases cited above all involved the judge-made, second degree felony-murder rule and not the statutory rule of Penal Code section 189. The Supreme Court, however, has also taken a restrictive view in interpreting the codified rule. All the other cases have cited *People* v. *Washington,* 62 Cal.2d 777 [44 Cal.Rptr. 442, 402 P.2d 130], in which the operation of Penal Code section 189 was limited to cases in which the defendant or his accomplice was the killer. He could not be guilty of first degree murder if the killing was committed by the victim. The court stated at page 783: "The felony-murder rule has been criticized on the grounds that in almost all cases in which it is applied it is unnecessary and that it erodes the relation between criminal liability and moral culpability. [Citations.] Although it is the law in this state (Pen. Code, § 189), it should not be extended beyond any rational function that it is designed to serve."

Although appellant's argument is rational, he is faced with problems derived from other Supreme Court positions on the felony-murder rule. In *People* v. *Talbot,* 64 Cal.2d 691 [51 Cal.Rptr. 417, 414 P.2d 633], overruled on other grounds, see *People* v. *Wilson,* 1 Cal.3d 431, 442 [82 Cal.Rptr. 494, 462 P.2d 22], the Supreme Court was faced with a similar argument. There the original entry into the house was with the permission

of the owner. The appellant argued that the crime of burglary referred to in section 189 of the Penal Code was the crime of burglary as defined by the Penal Code in 1872. The court first analyzed the facts and concluded that the defendant was guilty of the crime of burglary even as burglary was defined by the Penal Code in 1872. The court then went on, however, to observe that "In any event, both section 189 and section 459 of the Penal Code have been amended more than once since their enactment.

". . . . . . . . . . . . . . . .

"It is a generally accepted principle that in adopting legislation the Legislature is presumed to have had knowledge of existing domestic judicial decisions and to have enacted and amended statutes in the light of such decisions as have a direct bearing upon them. [Citations.]

"Accordingly, the crime of burglary referred to in section 189 of the Penal Code is the same as presently set forth in section 459. Therefore, the trial court properly instructed on murder committed in the perpetration of burglary. [Citation.]" (People v. Talbot, supra, at p. 705.)

Furthermore, the Supreme Court has explained that in determining whether the underlying felony is inherently dangerous, the felony is to be assessed "in the abstract" and not on the basis of the particular case. (People v. Satchell, supra, 6 Cal.3d 28, 39; People v. Lopez, supra, 6 Cal.3d 45, 52.) Application of this principle would preclude judicial separating of burglaries on a case-by-case basis. However, separating burglaries into those coming within the 1872 definition and those not doing so would not be a case-by-case assessment and would preserve a classification based on the "inherently dangerous" principle.

█ Although it appears in keeping with the basic principles of the felony-murder rule to limit its application to burglaries of a type inherently dangerous, it is concluded that such a decision must be one undertaken by the Legislature, in view of the wording of Penal Code section 189, or by the Supreme Court, in view of People v. Talbot, supra, 64 Cal.2d 691.

We find appellant's contention that the trial court abused its discretion by allowing appellant to stand trial in leg irons to be without merit. "A defendant may be required to undergo reasonable restraints when they are necessary to assure his detention or to maintain order in the courtroom." (People v. Chacon, 69 Cal.2d 765, 778 [73 Cal.Rptr. 10, 447 P.2d 106, 34 A.L.R.3d 454]; Pen. Code, § 688.) The decision with respect to restraints is within the sound discretion of the trial judge who is in the best position to assess such relevant factors as the security facilities in his jurisdiction and the conduct and attitude of the defendant. To overcome the presumption that the trial judge faithfully performed his duty, the defendant

must show "without equivocation that there was no basis whatever for the restraint employed." (*People* v. *Morris,* 20 Cal.App.3d 659, 666 [97 Cal. Rptr. 817]; *People* v. *Pena,* 25 Cal.App.3d 414, 425-426 [101 Cal.Rptr. 804].)

In the case at bench, the trial judge could consider the fact that the appellant was accused of a homicide committed in an act of sudden violence and the fact that he had shown a capacity and desire to disrupt the courtroom in a spitting incident after a pretrial motion. The argument that leg irons will not restrain spitting is specious. The relevance of the spitting incident is its indication to the court of hostility and lack of self-control which could well erupt in other ways. The appellant has failed to make the required showing.

The record also reveals that there is no merit to appellant's contention that the court did not hold an adequate hearing on his requests to discharge his attorney. The court gave the defendant an opportunity to state his reasons for dissatisfaction and left open the opportunity to renew the motion if further reasons became apparent. The record also reveals a vigorous and carefully prepared defense. There is no reason to conclude that the trial court abused its discretion by not holding a more extensive inquiry (cf. *People* v. *Groce,* 18 Cal.App.3d 292, 296 [95 Cal.Rptr. 688]), or in denying appellant's request that counsel be discharged. (*People* v. *Williams,* 2 Cal.3d 894, 904-906 [88 Cal.Rptr. 208, 471 P.2d 1008].)

The judgment is modified to provide a punishment of life imprisonment instead of death for the murder in accordance with *People* v. *Anderson, supra,* 6 Cal.3d 628, and as so modified is affirmed.

Draper, P. J., and Caldecott, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 8, 1973. Mosk, J., was of the opinion that the petition should be granted.