[Crim. No. 27742. Second Dist., Div. Five. July 16, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID CAMAREA REYES, Defendant and Appellant.

## COUNSEL

F. Elaine Easley, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab, Ellen Birnbaum Kehr and Alexander W. Kirkpatrick, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

KAUS, P. J.—Defendant, 20 years old at the time of the commission of the crime, was convicted of first degree murder. (Pen. Code, § 187.) No "special circumstances" which, if found true, would have made the death penalty mandatory, were charged. (Pen. Code, § 190.1-190.2.) Trial was to the court.

On appeal, defendant urges (1) that the evidence was insufficient to support the conviction; and (2) that the trial court erred in concluding that he was not eligible to be sentenced as a youthful offender under section 1202b of the Penal Code.

The facts, in brief, are that defendant and his 16-year-old brother broke into the home of a neighbor between midnight and 1:30 a.m., on March 1, 1975. While on the premises, defendant robbed and killed the victim.

■ The contention that the evidence is insufficient to support the finding of guilt is predicated, in part, on certain specific findings made by the trial court. These were: (1) that defendant was not guilty of first degree murder on the theory of "willful premeditated murder;" (2) that defendant was not guilty of felony murder on the theory that the killing was committed in the perpetration of robbery;[1] and (3) that defendant was guilty of first degree murder only because the killing was committed in the perpetration of burglary.

---

[1] In so finding, the court expressly referred to *People* v. *Gonzales,* 66 Cal.2d 482, at page 486 [58 Cal.Rptr. 361, 426 P.2d 929], to the effect "that intent to rob formed subsequent to the infliction of mortal wounds was not sufficient to support a finding of first degree felony murder."

Defendant points to evidence that he and his brother entered the premises out of curiosity, rather than with the intent to commit a felony. He also relies on certain evidence that he was under the influence of alcohol and drugs.

While the evidence referred to might have persuaded the trial court to have a reasonable doubt concerning defendant's intent at the time he entered the premises and his capacity to harbor any such intent, it was by no means compelling. The evidence is more than adequate to support the conviction. (*People* v. *Earl,* 29 Cal.App.3d 894, 897 [105 Cal.Rptr. 831]; *People* v. *Terry,* 202 Cal.App.2d 604, 608 [20 Cal.Rptr. 915].)

Defendant's second contention does, however, have merit. After the court sentenced defendant to prison for the term prescribed by law, it added: "The defendant is sentenced pursuant to 1168 of the Penal Code, and the Director of Corrections is ordered to submit to the court within 120 days a diagnosis and recommendation with respect to a possible consideration for a sentence under 1202b." The prosecutor then drew the court's attention to *People* v. *Sirignano,* 42 Cal.App.3d 794, 802-804 [117 Cal.Rptr. 131], claiming that its holding made defendant ineligible for sentencing under section 1202b and that therefore it was pointless to order a report under section 1168. The court agreed that in view of *Sirignano,* there was "no purpose in requiring the Adult Authority to submit a diagnostic report and recommendation and evaluation" and vacated that part of the sentence.

■ We think that the trial court erred in ruling that it had no discretion to sentence defendant as a youthful offender under section 1202b. The last sentence of that section provides that it "does not apply to any offense punishable by death."[2] In *People* v. *McCullin,* 19 Cal.App.3d 795 [97 Cal.Rptr. 107], the defendant was convicted of first degree murder after the parties had stipulated that the death penalty would be neither sought nor imposed. We held that by declaring that section 1202b did not apply to any offense punishable by death, the Legislature "meant to exclude all offenses for which the statute authorizes the death penalty as a possible maximum punishment regardless of whether it is imposed in a particular case." (*Id.,* at

---

[2]Since, under the present statutory scheme, the death penalty is mandatory in situations to which it applies, the last sentence of section 1202b, read literally, is unnecessary at best, a macabre joke at worst. It has been part of section 1202b since it was first enacted in 1959 and obviously was overlooked at the time of the 1973 legislation mandating the death penalty under certain "special circumstances."

pp. 798-799.) At that time, of course, section 190 of the Penal Code provided that first degree murder was punishable by death or life imprisonment at the discretion of the court or jury. Six months later, however, in *People* v. *Anderson,* 6 Cal.3d 628 [100 Cal.Rptr. 152, 493 P.2d 880], the Supreme Court held the death penalty unconstitutional and until the enactment of sections 190-190.3 of the Penal Code in 1973 (Stats. 1973, ch. 719, p. 496), the only punishment for first degree murder was life imprisonment. The court, however, noted that the legislative judgment that certain offenses warranted capital punishment was of continued significance on the question of whether or not an accused was entitled to bail as a matter of right under article I, section 6, of the California Constitution, and section 1270 of the Penal Code. (*Id.,* at p. 657, fn. 45.)

The question whether section 1202b was applicable to an offense which, as enacted, was punishable by death was expressly left open in *People* v. *Chambers,* 7 Cal.3d 666, 674, footnote 9 [102 Cal.Rptr. 776, 498 P.2d 1024]. It was, however, squarely decided in *People* v. *Sirignano, supra,* 42 Cal.App.3d 794, the case relied on by the trial court here. The homicide involved in *Sirignano* was committed on August 8, 1972, after *Anderson;* therefore, the only punishment faced by the defendant was life imprisonment. Nevertheless, the court followed *People* v. *McCullin, supra,* 19 Cal.App.3d 795, holding that it was immaterial whether the possibility of the death penalty had been removed by stipulation or by the intervention of *Anderson.* A compelling analogy was found in footnote 45 of the *Anderson* opinion respecting bail: the legislative judgment that first degree murder was an offense of sufficient gravity to warrant the death penalty, made section 1202b inapplicable. (42 Cal.App.3d at pp. 803-804.)

The murder involved in this case was committed on March 1, 1975, by which time the statutory picture had drastically changed. In brief, pursuant to section 190 of the Penal Code, as amended in 1973, the only punishment for first degree murder is life imprisonment unless the defendant is charged with "special circumstances" listed in section 190.2 and one or more of those special circumstances have been found to be true according to the procedure delineated in section 190.1—in which case the only possible penalty is death.

As noted, in this case no special circumstances were alleged. Therefore, the only punishment faced by defendant was life imprisonment. This was, of course, also true in *Sirignano,* but at that time the legislative

judgment that any first degree murder could be punished by death was still on the books.

The People frankly admit that *In re Boyle,* 11 Cal.3d 165 [113 Cal.Rptr. 99, 520 P.2d 723], makes it very difficult, if not impossible, to apply the reasoning of *Sirignano* to this case. *Boyle* involved the question whether a defendant charged with murder and conspiracy to commit murder after the "special circumstances" legislation went into effect, but not charged with special circumstances, was entitled to an order fixing bail "as a matter of right." (Cal. Const., art. I, § 6; Pen. Code, §§ 1270-1271.) The Supreme Court held that he was: the situation to which footnote 45 of the *Anderson* opinion addressed itself no longer prevailed; the most recent legislative judgment was that in the absence of special circumstances first degree murder was not a capital offense. Boyle was therefore not charged with an offense punishable by death.

The People, while recognizing that by a parity of reasoning defendant in this case was not convicted of "any offense punishable by death" (Pen. Code, § 1202b), suggest that admissibility to bail and eligibility to be sentenced as a youthful offender under section 1202b are not necessarily governed by the same test. The problem is, however, that even if we agreed in theory, we cannot think of any other workable test. The only suggestion made to us is that section 1202b is not applicable if the evidence adduced against the defendant would be sufficient to support a finding of one of the special circumstances enumerated in section 190.2, had the defendant been charged with such special circumstances. As far as this case is concerned, the People point out that the record contains some evidence of special circumstances. Specifically there is some evidence that "defendant personally committed the act which caused the death of the victim" (Pen. Code, § 190.2, subd. (b)), that the "murder was willful, deliberate and premeditated" (Pen. Code, § 190.2, subd. (b) (3)), and that it was committed during the commission of a robbery. (Pen. Code, § 190.2, subd. (b) (3) (i).)

Yet, if the test suggested by the People were the law, this would be the very case which demonstrates its basic flaw: As noted the court made specific findings that the murder was not premeditated and that it was not committed during the commission of a robbery. In the vast majority of cases, of course, where no special circumstances are charged, no one would ever know what findings a court or jury would have made with respect to issues not essential to a finding of guilt of first degree murder. It simply cannot be that the applicability of section 1202b depends on

findings that are not made, let alone on findings which are, as in this case, expressly negated.

We therefore hold that defendant was eligible to be sentenced under section 1202b and that the trial court was led into error when it vacated its previous request for a diagnostic study under section 1168. Defendant should therefore be returned to the superior court for resentencing. Since he has been in the custody of the Department of Corrections for over a year, the officials therein undoubtedly have information which would be useful to the sentencing judge. (*People* v. *Ruiz,* 14 Cal.3d 163, 168 [120 Cal.Rptr. 872, 534 P.2d 712]; *In re Huddleston,* 71 Cal.2d 1031, 1037 [80 Cal.Rptr. 595, 458 P.2d 507].) We, of course, express no opinion concerning the manner in which the trial court should exercise its discretion.[3]

The judgment is affirmed insofar as it adjudicated defendant's guilt. The sentence imposed is vacated and the case is remanded to the trial court for resentencing in light of this opinion.

Stephens, J., and Ashby, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 8, 1976.

---

[3]We further note the obvious: This holding must be narrowly confined to the precise question involved in this case. We can foresee many future questions concerning the relationship between "plain" first degree murder and "special circumstances" murder. (Cf. *People* v. *Henderson,* 60 Cal.2d 482, 497 [35 Cal.Rptr. 77, 386 P.2d 677].)