Filed 9/16/14  P. v. Saravia CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>VINCENT G. SARAVIA,<br><br>    Defendant and Appellant. | B247663<br><br>(Los Angeles County<br>Super. Ct. No. BA399243) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michael D. Carter, Judge.  Affirmed.

Maggie M. Shrout, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Erika D. Jackson, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Vincent G. Saravia (Saravia) was convicted on two counts of second degree robbery (Pen. Code, § 211)[1] relating to separate robberies, one count of making criminal threats to the victim of the first robbery (§ 422), and one count of second degree commercial burglary (§ 459) arising out of the same events surrounding the first robbery. He argues that (1) his eight-month sentence on the criminal threats count must be stayed pursuant to section 654 because the threats were made within the course of the first robbery, and (2) the trial court violated his state and federal rights to fair notice and due process of law, and abused its discretion under section 1009, when it amended the information on its own motion to add the burglary charge after the presentation of evidence at trial. We find no error and affirm.

## FACTS

### The Information; Saravia's Not Guilty Plea

Following a preliminary hearing, the Los Angeles District Attorney's Office filed an information charging Saravia with two counts of second degree robbery (counts one and four; § 211), one count of attempted extortion (count two; §§ 664 and 524), and one count of criminal threats (count three; § 422).[2] At the arraignment, Saravia pleaded not guilty to all four counts.

### Trial

At trial, Walter Gerardo Mendez (Mendez) testified that in the early afternoon on November 29, 2010, he was working alone inside his cell phone and accessory store when he saw Saravia walk by the front of the store twice while looking inside as he passed. He eventually entered the store, browsed the merchandise, and asked the price for a cell phone charger. Mendez said that the charger was $9. Saravia inquired about the price of two cell phones in a display case. In response, Mendez said they were about $280 before taxes. Saravia exited the store, stood by the doorway and talked on his

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     The second charge of second degree robbery, count four, stemmed from a May 24, 2012, robbery Saravia committed on a separate victim, and Saravia raises no issues on appeal relating to that incident.

2

phone while looking inside the store and down the street. He ended his phone conversation and reentered the store. His hand was inside his sweatshirt pocket and pointing at Mendez, and Mendez believed that Saravia had a gun. Again, he asked how much the charger was, and again was told $9. Then Saravia demanded $40, and later $200. He said Mendez had to pay to work in Saravia's neighborhood, and that if Mendez did not pay, he would be shot by Saravia and his "homeboys."

When Mendez said he had no money, Saravia said he was going to take some cell phones instead. Mendez asked Saravia, "Are you robbing me?" Saravia told Mendez not to move. Because he was afraid he would be shot, Mendez did not try to stop Saravia when he reached into the nearby display case and took the two cell phones they had just discussed.

At that point, Mendez said he was going to call the police. Saravia replied, "Go ahead. Call them. I have no fear." He threatened to shoot and kill Mendez if he called the police. Saravia left the store.

Saravia took the stand in his own defense. He denied threatening or demanding money from Mendez, and instead claimed he took the cell phones from the display case when Mendez's back was turned.

**The Amended Information**

After the presentation of the evidence, but before deliberations began, the trial court indicated it would amend the information to add a fifth count of second degree commercial burglary (count five; § 459). The defense did not object. Saravia pleaded not guilty to the fifth count.

**The Jury Verdict; Sentencing**

The jury convicted Saravia on counts one, three, four, and five. It found Saravia not guilty on count two.

Saravia admitted that he had two violent felony convictions as to count four, and one violent felony conviction as to counts one, three and five. (§ 667.5, subd. (b)). The trial court denied probation and sentenced Saravia to a total of five years eight months in state prison, calculated as follows: as to count one, three years in state prison; as to count

3

three, eight months in state prison; as to count four, one year in state prison plus one year for the violent felony prior; and as to count five, one year in state prison plus one year for the violent felony prior. Count five was stayed pursuant to section 654. The trial court went on to find that Saravia was in violation of probation on a previous drug-related case and imposed an additional, consecutive eight-month sentence.

This timely appeal followed.

## DISCUSSION

**I. Substantial Evidence Supports Separate Sentencing for Robbery and Criminal Threats.**

Saravia argues that section 654 required the trial court to stay his sentence on the criminal threats conviction because he threatened Mendez with the sole objective of facilitating the robbery.

We disagree.

A. *Standard of Review*.

"Whether section 654 applies . . . is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.]" (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from it. (*People v. Lopez* (2013) 56 Cal.4th 1028, 1069.)

B. *Section 654*.

Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

4

If multiple offenses were incidental to or the means of facilitating one criminal objective, then section 654 applies.  (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.)  When it bars punishment for a particular offense, the sentence for that offense must be stayed.  (*People v. Pena* (1992) 7 Cal.App.4th 1294, 1312.)  Section 654 does not apply to indivisible acts when the "defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other[.]"  (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

C.  *Analysis*.

"'Robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  [Citations.]'"  (*People v. McKinnon* (2011) 52 Cal.4th 610, 686 (*McKinnon*).)  It is a public offense to threaten to commit a crime which will result in death or great bodily injury to another person if the speaker has the specific intent that the statement is to be taken as a threat.  The threat, on its face and under the circumstances, must be so unequivocal, unconditional and immediate as to convey that the threat will be carried out, and it must cause the victim to suffer a reasonable and sustained fear for his or her own safety.  (§ 422.)

The question is whether Saravia's objective when threatening to shoot and kill Mendez was to facilitate the robbery of the cell phones.  If so, section 654 applies.  But if Saravia's objective was to dissuade Mendez from calling the police, that is an independent objective and section 654 is not triggered.  (*People v. Nichols* (1994) 29 Cal.App.4th 1651, 1657–1658 [a threat to kill the victim during a kidnapping for robbery had the separate objective of avoiding detection and conviction by dissuading and intimidating a witness within the meaning of section 136.1, subd. (c)(1)]; *People v. Solis* (2001) 90 Cal.App.4th 1002, 1021–1022 [criminal threats had the objective of frightening the victim, and subsequent arson had the separate objective of burning the victim's apartment]; *People v. Felix* (2001) 92 Cal.App.4th 905, 915 ["multiple crimes are not one transaction where the defendant had a chance to reflect between offenses and each offense created a new risk of harm"].)

5

The record established that Saravia placed his hand in his pocket, implying that he was holding a gun, and said he and his homeboys would shoot Mendez when he claimed not to have any money. When Saravia said he was going to take some cell phones, Mendez asked if he was being robbed. Saravia told him not to move. As Saravia was taking the cell phones from the display case, Mendez did not move because he thought he would be shot. Once Saravia had obtained the cell phones, Mendez said he was going to call the police. At that point, Saravia said that if Mendez called the police, he would be shot and killed.

The trial court reasonably inferred that Saravia's actions leading up to his taking of the cell phones had the objective of facilitating the robbery, and that his second threat to shoot Mendez had the separate objective of dissuading Mendez from reporting the robbery to the police. We base our conclusion on the following considerations. When Saravia issued the second threat, he had already obtained the fruits of his endeavor. Moreover, Mendez did not try to stop Saravia from taking the cell phones, nor did he try to prevent Saravia from leaving the store. Thus, Saravia did not need to employ any additional threats to accomplish the robbery. Notably, by the time Saravia took the cell phones out of the display case, the asportation element of robbery had already been satisfied. (*People v. Quinn* (1947) 77 Cal.App.2d 734, 736–737 [asportation was established when the defendant ordered the victim at gunpoint to throw down his wallet]; *People v. Pham* (1993) 15 Cal.App.4th 61, 65 ["[a] very slight movement is sufficient for asportation"].)[3] Instead of trying to stop Saravia, Mendez said he was going to call the police. This presented a future rather than a present problem for Saravia. It posed the

---

[3]      We are not suggesting that the robbery was completed and therefore it was divisible in time from the criminal threat. There is a distinction between when the elements of a robbery are present for purposes of establishing guilt and when asportation reaches its terminus. *People v. Gomez* (2008) 43 Cal.4th 249, 256 (*Gomez*) explains: "'[A]lthough, for purposes of establishing guilt, the asportation requirement is initially *satisfied* by evidence of slight movement [citation], asportation is not confined to a fixed point in time. The asportation continues thereafter as long as the loot is being carried away to a place of temporary safety.' [Citation.]" Based on *Gomez*, the robbery was not complete at the time Saravia issue the second threat.

6

possibility that he would eventually get caught rather than the possibility that he would be prevented from completing the robbery. Therefore, when Saravia issued the second threat, it is inferable that his objective was to eliminate the possibility of being apprehended by the police.

Based on the foregoing, section 654 did not bar the trial court from punishing Saravia under section 422.

Our conclusion is bolstered by *In re Jesse F.* (1982) 137 Cal.App.3d 164, a case cited by Saravia. In that case, the defendants took the victim's watch and money, and had control of his car keys and car. When he tried to escape, the defendants tried to murder him. The court upheld separate punishments for robbery and attempted murder. (*Id*. at p. 171.) It observed that "[w]hen there is an assault *after* the fruits of the robbery have been obtained, and the assault is committed with an intent other than to effectuate the robbery, it is separately punishable." (*Ibid*.) The court recognized that a robbery continues until the perpetrators reach a place of temporary safety, but it nonetheless concluded that the rule "cannot mean every act a robber commits before making his getaway is incidental to the robbery." (*Ibid.*) The same holds true here. Even though the robbery was continuing at the time that Saravia issued his second threat, the evidence shows that the threat was not incidental.

## II. Saravia Forfeited His Right to Challenge the Amendment; Regardless, the Trial Court did Not Err.

According to Saravia, the trial court violated his right to due process by amending the information to include a commercial burglary count, and abused its discretion granted to it by section 1009. However, the record indicates Saravia did not object to the amendment. Thus, his argument has been forfeited. Case law dictates this conclusion. When an information is amended, "and the defendant offers no objection, makes no motion for continuance, and nothing is called to the court's attention to show that such amendment prejudices the rights of defendant, the claim that the trial court erred in ordering the filing of the amended information may not be raised for the first time on

7

appeal." (*People v. Lewis* (1983) 147 Cal.App.3d 1135, 1140; *People v. Hernandez* (1961) 197 Cal.App.2d 25, 31.)

Even if this issue was cognizable on appeal, we would find no error.

Section 1009 provides in pertinent part: "The court in which an action is pending may order or permit an amendment of an . . . information . . . at any stage of the proceedings. . . . An indictment or accusation cannot be amended so as to change the offense charged, nor an information so as to charge an offense not shown by the evidence taken at the preliminary examination."

Section 459 provides that every person who enters a shop or store "with intent to commit grant or petit larcenary or any felony is guilty of burglary." At the preliminary hearing, the evidence showed that Saravia entered Mendez's store, looked around for a few minutes and asked the price of a phone charger. Saravia left the store for a minute or two to talk on his phone, and then reentered. He immediately placed his right hand in his sweatshirt pocket. At some point, that action led Mendez to believe that Saravia was holding a concealed gun. Again, Saravia asked the price of a phone charger. After stating they were in his neighborhood and Mendez had to pay to be there, Saravia demanded $40 and then $200. When Mendez said he did not have any money, Saravia took some cell phones. The circumstantial evidence supports the conclusion that Saravia went into the store to assess it as a target for robbery, and then reentered with the intent to commit robbery. (*People v. Terry* (1962) 202 Cal.App.2d 604, 608 ["While the existence of the specific intent charged at the time of entering a building is necessary to constitute burglary in order to sustain a conviction, this element is rarely susceptible of direct proof and must usually be inferred from all of the facts and circumstances disclosed by the evidence"].)

A trial court may permit an amendment even at the close of trial as long as the defendant is not prejudiced. (*People v. Witt* (1975) 53 Cal.App.3d 154, 165.) Here, Saravia was not prejudiced because the preliminary hearing established a rational basis for concluding that he committed commercial burglary, and he was therefore placed on sufficient notice of the potential charge against him so that he could prepare a defense.

8

(*People v. Superior Court (Lujan)* (1999) 73 Cal.App.4th 1123, 1127 [if there is a rational basis to conclude from the evidence at a preliminary hearing that the defendant committed a crime, he or she can be held to answer]; *People v. Valladoli* (1996) 13 Cal.4th 590, 607, citing *In re Hess* (1955) 45 Cal.2d 171, 175 ["Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial"].)

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, Acting P. J.
       ASHMANN-GERST


We concur:


_____, J.
       CHAVEZ


_____, J.*
       FERNS

---

*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.