[Crim. No. 9485. First Dist., Div. Three. Nov. 8, 1971.]

THE PEOPLE, Plaintiff and Appellant, v.
LLOYD HENRY HILL, Defendant and Respondent.

## Counsel

Evelle J. Younger, Attorney General, Robert R. Granucci and William D. Stein, Deputy Attorneys General, for Plaintiff and Appellant.

Donatas Januta for Defendant and Respondent.

## Opinion

**CALDECOTT, J.**—Respondent Lloyd Henry Hill and four others[1] were charged by amended indictment filed September 17, 1970 with the follow-

---

[1] The four other defendants pleaded guilty to certain of the offenses charged and have dismissed their appeals.

ing offenses: Count I: conspiracy to commit armed robbery (Pen. Code, § 182); count II: kidnaping of E. Marie Hemphill for purposes of robbery (Pen. Code, § 209); count III: kidnaping Grady Hemphill for the purposes of robbery (Pen. Code, § 209); counts IV, VI, VII: assault with intent to commit murder (Pen. Code, § 217); count V: robbery (Pen. Code, § 211). Respondent was charged with a prior felony conviction.

Respondent entered a plea of not guilty.

The superior court dismissed counts II and III (kidnaping), and the People appeal from the order dismissing these counts.

On Friday, August 28, 1970, Mr. Grady Hemphill was seated in his automobile in the parking lot of a Lucky supermarket in Redwood City. Respondent Hill approached the car, exhibited a pistol in a holster, and ordered Mr. Hemphill out of the car. He directed Hemphill to march towards the store. Approximately half way between the car and the store they encountered Mrs. Hemphill who had been shopping. Mr. Hemphill said, "This fellow's robbing us. He has our car keys." Mrs. Hemphill tried to talk Hill into returning the car keys, but he pulled out a "little hatchet and waved it in front of her face," and started them both marching back to the store after showing Mrs. Hemphill the gun. As they entered the store, Mrs. Hemphill realized that Hill and an accomplice intended to rob it. Before she realized what happened, Hill was already at a checkstand about 20 feet away from the entrance to the market where he had left the Hemphills standing. She yelled "It's a robbery. Call the police," whereupon Hill pulled his gun and shot her in the chest.

The assistant manager of the store was in the office when he heard shots and looked up to see an apparent robbery in progress. He dialed the operator to relay the information to the police. One of the robbers came into the office with a grocery clerk in custody and emptied a safe of currency.

When the police arrived they parked in front of the store. As they left their cars one of the robbers backed out of the store, turned and fired, striking an officer in the arm. The wounded officer managed to recover his weapon and proceeded to the side exit of the store where he apprehended all the robbers as they were entering the getaway vehicle.

 The only issue raised on this appeal is whether the superior court erred in dismissing the kidnaping counts of the indictment.

 Under the rule of *People* v. *Daniels,* 71 Cal.2d 1119, 1139 [80 Cal. Rptr. 897, 459 P.2d 225], a defendant may not be convicted of kidnaping where "the movements of the victim are merely incidental to the com-

mission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself."

The record reveals no purpose for the movement of the victims herein, Mr. and Mrs. Hemphill, other than to facilitate the robbery of the supermarket. *People* v. *Gibbs,* 12 Cal.App.3d 526 [90 Cal.Rptr. 866], to the extent that it requires the movements to be "necessarily included" in the robbery, has been disapproved by the holding in *People* v. *Timmons,* 4 Cal.3d 411 [93 Cal.Rptr. 736, 482 P.2d 648]. (See *People* v. *Williams,* 2 Cal.3d 894, 902 [88 Cal.Rptr. 208, 471 P.2d 1008].)

The basic question presented by this appeal pertains to the second element of the *Daniels* case—substantial increase in the risk of harm. The present case is distinguishable from *Daniels, People* v. *Mutch,* 4 Cal.3d 389 [93 Cal.Rptr. 721, 482 P.2d 633], *People* v. *Williams, supra,* and *People* v. *Timmons, supra.* As stated in *Daniels,* "Indeed, when in the course of a robbery a defendant does no more than move his victim around inside the premises in which he finds him—whether it be a residence, as here, or a place of business or other enclosure—his conduct generally will not be deemed to constitute the offense proscribed by [Penal Code] section 209." (*Id.* at p. 1140.) In *Mutch* the alleged kidnaping took place within the offices of a milk company, and the pistol whipping of the victims commenced before there was any movement. In both of these cases, *Daniels* and *Mutch,* the victims were subjected to no greater risks of harm by being compelled to move from one room to another. In *People* v. *Williams, supra,* at page 902, the court specifically stated that increase in the risk of harm was not an element of that case. The point discussed in *Williams* was the element of movement. *People* v. *Timmons, supra,* 4 Cal.3d 411, is also distinguishable from the present case. In *Timmons,* as the court pointed out at page 415, "it was to Timmons' advantage that the car be driven as innocuously as possible so as to attract no attention from passersby." In other words, Timmons was intentionally not increasing "the risk of harm" so as not to attract attention to himself. Also, Timmons was not armed with any weapon, so his capacity to increase the risk of harm was questionable. Further, neither victim suffered any harm whatever.

The Hemphills were moved by the defendant from an outdoor parking lot to inside a building. When Mrs. Hemphill first encountered the defendant in the parking lot and she refused to cooperate with him, defendant pulled out a "little hatchet and waved it in front of her face," and then marched both of them to the store after showing her the gun. After they were within the confines of the building, and she again caused defendant trouble, he shot her. It is significant that the defendant, though armed with a gun, did not shoot Mrs. Hemphill, when she interfered with

his plans outside the building, but, instead, tried to intimidate her with a silent type weapon (hatchet). Once inside the building, shielded by the structure, he did not hesitate to use the gun when there was interference with his plans. To have fired a gun in the lot would have disclosed the fact to any passersby that a robbery was about to take place in the supermarket, with the result that respondent would have defeated his own purpose. The Hemphills were actually in a relatively safe position in the lot if respondent was to carry out his plan to commit the robbery. On the other hand, the building into which the respondent moved the Hemphills protected him from the observation of passersby, and thus was an area of danger. There is no question that the movement involved substantial increase in the risk of harm that might, *and in fact did,* come to the victims.

The order granting the motion made pursuant to Penal Code section 995 as to counts II and III of the amended indictment is reversed.

Draper, P. J., and Brown (H. C.), J., concurred.