[Crim. No. 12255. First Dist., Div. Two. Sept. 16, 1974.]

In re BOB LOKEY on Habeas Corpus.

## COUNSEL

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Gloria F. DeHart, Alvin J. Knudson and Ronald E. Niver, Deputy Attorneys General, for Appellant.

Robert Y. Bell, under appointment by the Court of Appeal, for Respondent.

## OPINION

**BRAY, J.**\*—Appellant appeals from order of the Marin County Superior Court granting respondent's application for writ of habeas corpus and ordering the Adult Authority to strike from its records respondent's sentence

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

for violation of section 209 of the Penal Code (kidnaping for the purpose of robbery).

## QUESTION PRESENTED

Is the trial court's determination that respondent's conduct fell outside the reach of section 209 of the Penal Code legally erroneous?

## RECORD

Respondent was convicted of violation of section 189 of the Penal Code (murder of the first degree) and section 209 of the Penal Code (kidnaping for the purpose of robbery). He was sentenced to state prison for the terms prescribed by law, sentences to run concurrently with respect to each other. The Marin County Superior Court, on respondent's application for writ of habeas corpus, granted the writ and ordered the Adult Authority to strike from its records his conviction for violation of section 209 of the Penal Code. The court also denied appellant's application for rehearing or modification of that order, but granted stay of execution of the order. Appellant appeals.

## FACTS

On August 14, 1962, Ian Shuttleton, his wife, and their young child parked near Sacramento to spend the night in their trailer while on vacation. About midnight they were awakened by a knock, and at the command, "Open up. This is the law," Mr. Shuttleton opened the trailer door. Respondent entered with a gun in his hand; his brother, Galen Lokey, stood near the door. After Mr. Shuttleton handed over the keys to his car at respondent's demand, respondent forced him into a closet. Galen Lokey began driving the car with the trailer attached while respondent remained in the trailer with the Shuttletons. Galen Lokey testified that the reason for moving the vehicles was that "they was pretty close to the highway so we was going to pull down about to Franklin Boulevard, that's across the highway, and then take their money, throw their keys away or something, and then leave." Galen Lokey testified that he drove the car and attached trailer "a mile or a mile and a quarter."

As the vehicles began to move, respondent demanded money from Mrs. Shuttleton. When she advised respondent that they had no money, he replied "Well then, you'll die . . . I'm not afraid to use this gun. I've used it before." Shortly thereafter, the car stopped and Galen Lokey opened the trailer door. Respondent advised Galen to "Drive in the country." Following a brief conversation, Galen returned to the car and began to

drive again, stopping at a location where there were no houses nearby. Meanwhile, respondent forced Mrs. Shuttleton to get onto the bed. He then stuck the gun in her ribs and began to sexually molest her. When Mrs. Shuttleton screamed, Mr. Shutleton broke out of the closet. During an ensuing struggle between respondent and Mr. Shuttleton, respondent's gun was fired. The bullet went through respondent's shoulder and into Mr. Shuttleton. A few hours later Mr. Shuttleton died from the wound.

### Respondent Is Guilty of Violation of Section 209 of the Penal Code

■ Respondent contends that his conviction for violation of section 209 of the Penal Code was improper, claiming that the asportation of the victim was merely incidental to the robbery and did not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself.

The trial judge in his memorandum and minute order stated, inter alia, "The trailer in this case was very much the 'moving situs' of the robbery." The court applied *People* v. *Daniels* (1969) 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677], stating "the tragic outcome of this robbery could just as easily have occurred if the trailer had been standing still." As will hereinafter appear, the court erred in applying *Daniels* and *People* v. *Timmons* (1971) 4 Cal.3d 411 [93 Cal.Rptr. 736, 482 P.2d 648], and in holding that the asportation was not more than incidental to the robbery and did not enhance the danger to the victims.

In *People* v. *Daniels,* three of the victims were robbed in their respective homes or apartments, one being moved only 6 feet, another 18 feet, and the third 30 feet. The court held that "the brief movements which defendants . . . compelled their victims to perform in furtherance of robbery were merely incidental to that crime and did not substantially increase the risk of harm otherwise present." (P. 1140.) The court emphasized that merely moving a victim around inside his premises generally will not be deemed to constitute the offense we are considering. However, moving the victims a short distance and then, after deciding to take them "to the country," taking them a total distance of a mile and a quarter, all the time menacing one of the victims with a gun, cannot be compared to merely moving victims around in their own premises and cannot be said not to be increasing the danger of other harm to them besides robbing them. Movements of substantial distances, such as here, cannot be considered incidental to another crime, and are easily distinguishable from the brief movement referred to in *Daniels*. (See *People* v. *Lynch* (1971) 14 Cal.App. 3d 602 [92 Cal.Rptr. 411], victim driven several miles; *People* v. *Thomas* (1970) 3 Cal.App.3d 859, 866 [83 Cal.Rptr. 879], victims forced to move

from a well lit public street to a dimly lighted alley, where in addition to finding that the asportation increased the risk of harm to the victims the court stated that the asportation of the victims enabled the robber to "accomplish his purpose of robbery with much less probability of apprehension," just as in the instant case.)

The California courts have held that section 209 applies if the asportation is substantial in terms of time and space (*People* v. *Rocco* (1971) 21 Cal.App.3d 96, 105 [98 Cal.Rptr. 365]; *People* v. *Beaumaster* (1971) 17 Cal.App.3d 996, 1006-1007 [95 Cal.Rptr. 360], where the court stated "The robbery could well have been completed in the laundromat had defendants so desired," but applied section 209 to the asportation of the victim which followed).

The trial court in the instant case seemed to place importance on the fact that the robbery could have been completed the instant the robbers entered the camper. While this is true, the robbers did not rob then.

A kidnaping conviction usually will not be reversed if the defendant moved the victim (as here where they took the victims "to the country") from an area of relative safety to a location where it was easier for the robber to inflict substantial bodily harm upon his victim (*People* v. *Iverson* (1972) 26 Cal.App.3d 598, 606 [102 Cal.Rptr. 913]; *People* v. *Curtis* (1971) 21 Cal.App.3d 704, 708 [98 Cal.Rptr. 775], where the victims were asported only approximately five blocks; *People* v. *Hill* (1971) 20 Cal.App.3d 1049, 1053 [98 Cal.Rptr. 214]). The statement of the court in *People* v. *Hill* (p. 1053) "There is no question that the movement involved substantial increase in the risk of harm that might, *and in fact did,* come to the victims" is clearly applicable to the case at bench (*People* v. *Mays* (1971) 17 Cal.App.3d 641, 644 [95 Cal.Rptr. 190]; *People* v. *Ellis* (1971) 15 Cal.App.3d 66, 73 [92 Cal.Rptr. 907], where the asportation was only from the street to an upstairs apartment; *People* v. *Miller* (1970) 12 Cal.App.3d 922, 932-934 [91 Cal.Rptr. 97]).

The rule of *Daniels* does not apply where the movements "substantially increase the risk of harm over and above that necessarily present" in the other crime. Thus, conviction for kidnaping will be affirmed if the method of transportation was so fraught with danger that it increased the risk of harm (*People* v. *Cleveland* (1972) 27 Cal.App.3d 820, 826 [104 Cal. Rptr. 161] (defendant's possession of weapons and threats of violence); *People* v. *Milan* (1973) 9 Cal.3d 185, 193 [107 Cal.Rptr. 68, 507 P.2d 956] (defendant's possession of a gun during automobile ride accompanied by threats); *People* v. *Iverson, supra* (defendant drove car with knife at victim's neck); *People* v. *Apo* (1972) 25 Cal.App.3d 790, 796 [102 Cal.

Rptr. 242] (victim forcibly pushed and shoved, accompanied by threats)). In the instant case the asportation was substantial, during which respondent held a gun over Mrs. Shuttleton, thereby increasing the risk of harm to her beyond that inherently attendant upon the crime of robbery. Moreover, it is extremely doubtful if respondent would have attacked the wife if the trailer had remained where her screams could be overheard.

In *People* v. *Timmons, supra,* the circumstances were completley dissimilar to those in the instant case. The victims were forced to drive the defendant only about five blocks as he robbed them of the money they carried in the auto. He then stepped out of the car. Nothing occurred which was not incidental to the robbery, "the moving situs" of the robbery. Holding that the short drive did not increase the risk of harm to the victims, the court explained what it meant in *Daniels, supra,* "when we spoke of movements which 'substantially increase the risk of harm' beyond that inherent in the underlying crime . . . , we intended to refer to an increase in the risk that the victim may suffer significant physical injuries over and above those to which a victim of the underlying crime is normally exposed." (P. 414.) What more "significant physical injuries" can there be than the death of the husband and the physical attack on the wife? This definition of the phrase "substantially increase the risk of harm" clearly applies in the instant case. Moreover, the court in *Timmons* set forth the following footnote (p. 416): "To avoid misunderstanding, we reiterate that in a different set of circumstances a movement of five city blocks might well 'substantially' increase the risk and thereby expose the robber to a prosecution for kidnaping"—as in this case.

Moreover, the Supreme Court made specific note that the trial court found that Timmons *was not armed* during the commission of the offense. The court concluded that, due to this, plus the fact that the five-block movement occurred in broad daylight, and that it was in the interest of the defendant that the automobile be driven as innocuously as possible, the situation offered little risk of harm beyond that inherent in the crime of robbery itself. Accordingly, the Supreme Court determined that the conviction for kidnaping should be set aside. It is unquestioned in the case at bar that throughout the entire course of events respondent was armed with a pistol. Indeed, respondent made threats during the course of the asportation to kill the victims if they did not surrender their money to him. In at least three cases decided subsequent to *Timmons,* the Court of Appeal determined that the use of a gun by the defendant was to be regarded as a meaningful distinguishable characteristic from the *Timmons* case (*People* v. *Hill, supra,* p. 1052; *People* v. *Cleveland, supra,* p. 826; *In re Bryant* (1971) 19 Cal.App.3d 933, 936 [97 Cal.Rptr. 40]).

Any substantial asportation which involves forcible control of the robbery victim exposes him to grave risks of harm to which he would not have been subject had the robbery occurred at the point of initial contact (*People* v. *Thornton* (1974) 11 Cal.3d 738, 768 [114 Cal.Rptr. 467, 523 P.2d 267]).

The trial court commented upon the fact that "Being armed and threats to use a weapon are usually always part of the offense of armed robbery." While this is true, the longer the victim is held and the further he is transported the more the danger is that the robber will use the gun. In *People* v. *Beamon* (1973) 8 Cal.3d 625, 636 [105 Cal.Rptr. 681, 504 P.2d 905], the victim was driven through city traffic while forced to lie at gunpoint on the floor of the truck cab. The court stated "There was present here by reason of the abduction a material increase in the risk that the victim would suffer significant physical injuries, as in fact he did." In the instant case, Mrs. Shuttleton was driven through traffic while forced to lie on the bed at gunpoint.

In *People* v. *Milan, supra,* 9 Cal.3d at page 193, the court pointed out that unlike in *Timmons* a gun was used, and stated "The asportation gave risk to dangers not inherent in robbery, that a traffic collision would occur and that as a result of the motion of the car the gun would accidentally discharge." In the instant case the gun did discharge.

The order granting the writ of habeas corpus is reversed.

Taylor, P. J., and Kane, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 13, 1974. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.