[Crim. No. 14235. First Dist., Div. Four. Nov. 18, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
LONNIE DeCARLO SANFORD, Defendant and Appellant.

[Crim. No. 14195. First Dist., Div. Four. Nov. 18, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
NICHOLAS SOSA, Defendant and Appellant.

## COUNSEL

David H. Fielding, under appointment by the Court of Appeal, and Bushnell, Caplan & Fielding for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and Ann K. Jensen, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**EMERSON, J.*—**Lonnie DeCarlo Sanford and Nicolas Sosa (hereafter appellants) appeal from judgments convicting them of four counts of kidnaping for the purpose of robbery (Pen. Code, § 209)[1] and one count of robbery in the first degree (§ 211). Appellants were also found to have been armed and to have used a firearm during the commission of the offenses. (§§ 12022, 12022.5.) Their motions for a new trial on the kidnaping charges were denied.

Since appellants' contentions relate principally to questions of law, we shall not set forth the evidence in detail. It will be apparent from our discussion that "the Ayalas" and "the Egrmayers" were the victims of the kidnapings and the robbery.

Throughout their trial appellants were shackled with leg irons. Their motion to have the shackles removed was denied by the trial court.

In *People* v. *Duran* (1976) 16 Cal.3d 282 [127 Cal.Rptr. 618, 545 P.2d 1322], the Supreme Court held that a defendant cannot be subjected to physical restraints of any kind in the courtroom while in the jury's presence unless there is a showing of "manifest need for such restraints." It was further stated that "[t]he showing of nonconforming behavior in support of the court's determination to impose physical restraints must appear as a matter of record and, except where the defendant engages in threatening or violent conduct in the presence of the jurors, must otherwise be made out of the jury's presence. The imposition of physical restraints in the absence of a record showing of violence or a threat of violence or other nonconforming conduct will be deemed to constitute an abuse of discretion." (*People* v. *Duran, supra,* 16 Cal.3d 282, 291.)

The record in this case falls short of the kind of showing required by *Duran.* Since *Duran* was decided after the instant case was tried, disposition of the appeal, in this respect, depends upon whether, or to what extent, *Duran* should be given retroactive effect.

Where a rule of decisional law is enunciated as an application of a previously existing principle, it must be applied in all open cases.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]All further statutory references are to the Penal Code.

(*People* v. *Heredia* (1971) 20 Cal.App.3d 194, 199 [97 Cal.Rptr. 488].) Where a new rule of law is stated, however, the retroactivity of a decision must be established by the court faced with the application of that ruling. That part of *Duran* which holds that restraints may not be imposed in the absence of a manifest need for such restraints is an application of the rule established in *People* v. *Harrington* (1871) 42 Cal. 165. However, that portion of *Duran* which holds that there must be a record showing of the need for restraints enunciates a new rule of law.

■ The critical factors for determination of retroactivity are (1) the purpose of the new rule, (2) the reliance by law enforcement authorities on the old rule, and (3) the effect on the administration of justice of retrospective application of the new rule. (*Linkletter* v. *Walker* (1965) 381 U.S. 618, 636 [14 L.Ed.2d 601, 612, 85 S.Ct. 1731].) However, "the factors of reliance and burden on the administration of justice are of significant relevance only when the question of retroactivity is a close one after the purpose of the new rule is considered." (*In re Johnson* (1970) 3 Cal.3d 404, 410 [90 Cal.Rptr. 569, 475 P.2d 841].) Although the California Supreme Court in *In re Johnson, supra,* noted and followed the United States Supreme Court's policy of giving retroactive effect to decisions bearing on rights which directly affect the integrity of the fact-finding process, such a policy does not compel this court to hold the record showing requirement of *Duran* retroactive. ■ The *Duran* rule does not directly affect the "integrity of the fact-finding process" in that there has been no change in the long-standing rule of *People* v. *Harrington, supra,* 42 Cal. 165, regarding the use of physical restraints upon a showing of necessity. The new rule only *in*directly affects the integrity of the fact-finding process; it only requires that the showing of necessity must be made of record, to make possible a more effective appellate review of the determination.

The problem of retroactivity is thus closely analogous to that presented by the requirement, announced by the United States Supreme Court in *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], that the taking of a plea of guilty be supported by a record showing a knowing waiver of constitutional rights. It was not a new requirement that the waiver of rights be knowing; only a record showing of such a waiver was newly required. Moreover, under the former procedure, a large number of constitutionally valid convictions had been obtained. Therefore, the *Boykin* requirement was given prospective application only. (See *In re Tahl* (1969) 1 Cal.3d 122, 135 [81 Cal.Rptr. 577, 460 P.2d

449].) Similarly, here the purpose of the new rule is to make available effective appellate review of determinations imposing physical restraints. Trial courts, prosecutors and custodial officers have properly relied on the former rule which did not require a record showing of necessity for restraints. The effect of retrospective application of *Duran* would be to allow successful attacks on old convictions in which actually there was ample cause for imposing restraints and where it would thus not have aided the defense in any way if a showing of such good cause had been put on the record.

Under ordinary rules of appellate procedure a judgment of a lower court is presumed to be correct; all intendments and presumptions are indulged to support the judgment on matters as to which the record is silent, and error must be affirmatively shown. (See Witkin, Cal. Procedure, § 235, p. 4225.) "This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error." (*Id.,* citing *Walling* v. *Kimball* (1941) 17 Cal.2d 364, 373 [110 P.2d 58]; *Coleman* v. *Farwell* (1929) 206 Cal. 740 [276 P. 335]; *Laymon* v. *Simpson* (1964) 225 Cal.App.2d 50, 52 [36 Cal.Rptr. 859]; and *Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].)

This was the general rule of appellate review applied in *People* v. *Morris* (1971) 20 Cal.App.3d 659 [97 Cal.Rptr. 817], *People* v. *Pena* (1972) 25 Cal.App.3d 414 [101 Cal.Rptr. 804], and *People* v. *Earl* (1973) 29 Cal.App.3d 894 [105 Cal.Rptr. 831], and which the Supreme Court disapproved in *People* v. *Duran, supra,* 16 Cal.3d at page 292. The general rule, however, was in effect when the instant case was tried and when the judgments of conviction were entered. ▮ Under that rule, the correctness of the trial court's determination is to be presumed, in the absence of an affirmative showing to the contrary. No such showing appears in the record.

The California Supreme Court's recent decisions consistently have recognized the propriety of the reliance date which coincides with the trial date. (*In re Love* (1974) 11 Cal.3d 179 [113 Cal.Rptr. 89, 520 P.2d 713]; *People* v. *Rizer* (1971) 5 Cal.3d 35 [95 Cal.Rptr. 23, 484 P.2d 1367]; *People* v. *Gallegos* (1971) 4 Cal.3d 242 [93 Cal.Rptr. 229, 481 P.2d 237]; *In re Tahl, supra,* 1 Cal.3d 122; *People* v. *Mabry* (1969) 71 Cal.2d 430 [78 Cal.Rptr. 655, 455 P.2d 759]; *People* v. *Feggans* (1967) 67 Cal.2d 444 [62 Cal.Rptr. 419, 432 P.2d 21].) To the

same effect are decisions making newly announced rules purely prospective, e.g., *In re Yurko* (1974) 10 Cal.3d 857 [112 Cal.Rptr. 513, 519 P.2d 561]; *Mills* v. *Municipal Court* (1973) 10 Cal.3d 288 [110 Cal.Rptr. 329, 515 P.2d 273]. The *Duran* rule therefore should be held applicable only to cases tried after the date of that decision.

■ Appellants next argue that the movement of the Ayalas from their residence to that of the Egrmayers did not constitute kidnaping for the purpose of robbery within the meaning of Penal Code section 209. It has been held that the movement of a victim can constitute kidnaping for the purpose of robbery only if it (1) is not merely incidental to the commission of a robbery and (2) substantially increases the risk of harm beyond that inherent in the crime of robbery. (*In re Earley* (1975) 14 Cal.3d 122, 127 [120 Cal.Rptr. 881, 534 P.2d 721]; *People* v. *Daniels* (1969) 71 Cal.2d 1119, 1139 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677].) Appellants concede that the movement of the Ayalas over a distance of five or six miles was not merely incidental to the commission of the robbery. They argue, however, that the movement did not substantially increase the risk of harm to the Ayalas beyond that inherent in the crime of robbery.

Appellants' argument is without merit. The record shows that the Ayalas, who previously were threatened with death if they did not cooperate with their captors, were forced into their car and driven to the Egrmayer residence at gunpoint. The "risk of harm" test is satisfied when the victim is forced to travel a substantial distance under a threat of imminent injury by a deadly weapon. (*In re Earley, supra,* 14 Cal.3d 122, 131; *People* v. *Lara* (1974) 12 Cal.3d 903, 908 [117 Cal.Rptr. 549, 528 P.2d 365]; see *In re Lokey* (1974) 41 Cal.App.3d 767, 772-773 [116 Cal.Rptr. 299].)

■ Appellants also object to part of an instruction given by the trial court regarding the use of multiple verdict forms.[2] Appellants complain that the disputed portion of the instruction, which portion was drafted by the trial court, authorized the jury to conclude that a simple kidnaping was one for the purpose of robbery even though the movement of the victims did not substantially increase the risk of harm.

---

[2]The portion of the instruction to which appellants object reads as follows: "With regard to the charges of kidnapping and kidnapping to commit robbery, these counts are in the alternative. [¶] I suggest you decide first relative to each alleged victim whether the evidence establishes the commission of the crime of simple kidnapping. If so, you should then decide under the instructions whether the kidnapping was to commit robbery. If

This contention is unfounded. The disputed part of the instruction told the jury that it should first determine whether a kidnaping occurred and then decide "under the instructions" whether the kidnaping was one to commit robbery. The instruction thus incorporated or referred to that previously given on the offense of kidnaping for the purpose of robbery. Appellants concede that the latter instruction was correct. The jury could not have been misled.

Appellant Sanford assigns as error the court's denial of his motion to dismiss for lack of a speedy trial. The trial court's order sets forth the following facts: The offense was committed on September 16, 1973. Sanford was first identified as a suspect on March 11, 1974. In early 1974, Sanford was extradited from Arizona to stand trial in Santa Clara County on an unrelated charge. He was convicted in Santa Clara County on July 3, 1974, and sentenced on August 15, 1974. The complaint against Sanford in the case at bench was filed on November 15, 1974.

The trial court stated in its order that the delay between the commission of the offense (Sept. 16, 1973) and January 1974 was caused by Sanford's flight and extradition. The court further stated that the delay between the date when Sanford was first identified (Mar. 11, 1974) and that on which the proceedings in Santa Clara County terminated (Aug. 15, 1974) was reasonable because of the pendency of those proceedings. The prosecutor sought to justify the subsequent delay of some 90 days in instituting the instant proceedings on the ground that that time was needed to investigate the matter against codefendant Sosa and to determine whether to proceed. The trial court stated that "[w]hile this excuse is tenuous and not entirely clear, the Court does not find that the latter delay was unreasonable." The court further said that ". . . whatever disadvantage might have accrued to the Defendant by virtue of the lapse of time is not ascribed to the last 90 day period to such a degree as would warrant dismissal."

It has been held that the right to a speedy trial, as guaranteed by the Sixth Amendment and the California Constitution, arises only when a complaint or other formal charge is filed. (*People* v. *Archerd* (1970) 3 Cal.3d 615, 639 [91 Cal.Rptr. 397, 477 P.2d 421]; see *Jones* v. *Superior Court* (1970) 3 Cal.3d 734, 739 [91 Cal.Rptr. 578, 478 P.2d 10].) A delay between the alleged commission of an offense and the filing of charges,

you have a reasonable doubt that a kidnapping occurred as to any count, you should acquit as to that count." This language was preceded by CALJIC No. 17.49, to which no objection is made.

however, may deprive the accused of due process of law if it makes it difficult for him to conduct his defense. (*People* v. *Archerd, supra,* 3 Cal.3d 615, 640; *People* v. *Wilson* (1966) 239 Cal.App.2d 358, 365 [48 Cal.Rptr. 638].) In order to establish a denial of due process, the accused must show that there was no legitimate reason for the delay in initiating proceedings and that he was prejudiced by the delay. (*People* v. *Archerd, supra,* 3 Cal.3d 615, 640; *People* v. *Gilmore* (1965) 239 Cal.App.2d 125, 129 [48 Cal.Rptr. 449].) The claimed denial of due process, moreover, must be evaluated by balancing the effect of the delay against any justification for the delay. (*Jones* v. *Superior Court, supra,* 3 Cal.3d 734, 741, fn. 1; see *People* v. *Archerd, supra,* 3 Cal.3d 615, 640.)

■ Appellant does not contend, nor could he, that the delay in the initiation of proceedings caused by his flight was unjustified. Nor does he appear to contend that the further delay caused by the decision of the prosecutor to await the end of the proceedings in Santa Clara County was unreasonable. The crucial period, therefore, is the final 90-day delay.

A defendant who complains of a delay in the filing of charges bears the burden of showing that the delay caused him prejudice. (*People* v. *Archerd, supra,* 3 Cal.3d 615, 640; *People* v. *Gilmore, supra,* 239 Cal.App.2d 125, 129.) Sanford failed to demonstrate to the trial court that his capacity to present his defense had been harmed by the passage of time. It was averred in the declaration filed by Sanford's attorney in support of the motion to dismiss that the delay caused Sanford to experience difficulty in recalling pertinent facts, in locating witnesses, and in obtaining evidence. These assertions, however, were evidently not substantiated to the satisfaction of the trial court. Sanford fails to demonstrate that the trial court's conclusion in this respect was wrong.

Sanford refers, however, to instances in the testimony of the Ayalas and the Egrmayers in which the witnesses indicated that their ability to recall important facts relating to his identity and other matters had been diminished by the passage of time. It has been stated that prejudice from a delay in initiating proceedings may arise from ". . . the loss of a material witness or other missing evidence or fading memory caused by lapse of time." (*People* v. *Archerd, supra,* 3 Cal.3d 615, 640.) To at least some degree, however, any confusion shown by the prosecution witnesses on the issue of identity may actually have helped Sanford. Beyond this, the trial court suggested that, even if the final 90-day period of delay were considered unreasonable, any disadvantage to Sanford resulting

from the lapse of time could not be attributed with any certainty to that final period. If the witnesses' memories were dulled by the passage of time, that process must have begun long prior to the 90-day period preceding the filing of the complaint. The trial court did not abuse its discretion in denying the motion to dismiss.

The judgments are affirmed.

Rattigan, Acting P. J., and Christian, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 3, 1977. Mosk, J., was of the opinion that the petition should be granted.