Filed 5/19/14  P. v. Isaac CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALEXANDER QUINN ISAAC et al.,<br><br>    Defendants and Appellants. | 2d Crim. No. B245347<br>(Super. Ct. No. TA123080-01, -02)<br>(Los Angeles County) |

Alexander Quinn Isaac and Jonathan Victor Eason appeal a judgment after convictions by jury of kidnapping to commit robbery (Pen. Code, § 209, subd. (b)(1))[1]; first degree robbery of a transit passenger (§§ 211, 212.5, subd. (a)); and assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)).  Isaac admitted he served a prior prison term for vehicle theft.  (§ 667.5, subd. (a).)  Eason admitted he suffered prior convictions for vehicle theft and robbery.  (§§ 667.5, subd. (a), 667, subd. (a), 667, subds. (b)-(i); 1170.12, subds. (a)-(d).)  The trial court sentenced Isaac to a determinate term of six years in state prison and an indeterminate term of life in prison with the possibility of parole.  The trial court sentenced Eason to a determinate term of 19 years in prison and an indeterminate term of life in prison with the possibility of parole.  The court imposed consecutive terms for all counts.  It imposed a $240 "court security

_____

[1] All statutory references are to the Penal Code unless otherwise stated.

fee" upon each appellant as to each count, and an additional $30 "court security fee" upon each appellant.

Appellants pulled a passenger from a train and robbed him. Among other things, they that contend there was insufficient evidence of asportation to support a kidnapping conviction, the crime was not "perpetrated on" a train for purposes of the first degree robbery finding, and that the trial court erred when it did not allow Eason to explain the basis for his request for substitute counsel. (*People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).)

We stay sentence for robbery and correct fee assessment errors and otherwise affirm the judgment as to Isaac. We provisionally reverse the judgment as to Eason and remand with directions to conduct a *Marsden* hearing.

## FACTUAL AND PRODCUDURAL BACKGROUND

On an April night in 2012, Kam Yang boarded the Metro "Blue Line" train[2] in Long Beach to travel home to Westchester. He had spent the evening drinking with friends. He was carrying about $300 in cash and he was drunk.

At the Metro station, Yang took "a lot of cash" out of his pocket while he struggled to use the ticket machine. Appellants volunteered to help him. Yang had never met them. The three men boarded the train together.

At trial, Yang did not remember much of the ride. A surveillance video from inside the train shows Yang sitting with appellants on the train. The men talk and laugh. Yang and Eason appear to play dice. Yang and Eason display Bloods gang hand signs. Yang hands money to Eason. Yang viewed the video at trial, but testified that he could not remember whether they were gambling because he was drunk.

Yang testified that while they were still on the train, appellants told him they were going to rob him. He walked away from them and said, "You're not going to

---

[2] Neither party disputes that the Los Angeles County Metropolitan Transportation Authority Metro Blue Line train is a "vehicle operated on stationary rails" for purposes of section 212.5, subdivision (a).

2

rob me."  A surveillance video shows him walking away, speaking, gesturing, and then using his cell phone.  Yang testified that he pretended to call the police.

When the train stopped, Isaac grabbed Yang and pulled him out the door onto the platform, a distance of six to nine feet.  It was the last train of the night and not Yang's stop.  The surveillance video shows Yang trying to climb back onto the train and Isaac pulling him back to the platform.  Yang testified that he tried to get back on the train because he "didn't want to get robbed."

A surveillance video from the station shows Isaac beating Yang.  Eason initially walks away, but returns to Isaac and Yang.  Appellants bend over Yang and both appear to go through his pockets.  Isaac grabs Yang's legs, Eason grabs his shoulders and neck, and together they throw Yang onto the tracks and run away.  Yang testified that both appellants went through his pockets before they threw him onto the tracks.

Yang's face, shoulder, elbow and chin were injured.  Yang said he was missing "about $300" in cash.  He still had his cell phone and "a few dollars left" in his wallet.

*Evidence of Prior Robbery*

The trial court granted the prosecution's motion to present evidence that in 2008 appellants stole a cell phone from a boy on a bus.  The prosecutor argued that the prior robbery tended to prove intent.  The victim testified that when he was 15 years old, appellants boarded a bus and sat near him.  Eason told him he was going to take his phone and said, "[I]f you do anything about it, I'm going to shoot you."  Eason took the phone, and appellants got off the bus at the next stop.  The victim reported the crime.  He identified appellants that evening, and the police returned his phone.

*Eason's Request to Replace Counsel*

At a pretrial conference, Eason rejected a plea offer and the trial court denied his motion to dismiss pursuant to section 995.  After the ruling, Eason told the trial judge,  "My lawyer, he's not working--He ain't been working with me, and I would like to have some type of different lawyer, because he's not working."  Eason said, "I

3

asked for my transcripts last week. . . . He said he was going to give them to me, and he didn't give it to me because I didn't want to waive time. I asked him, once again, and he said yes. And I guess he's upset now, and he's saying no. All I did was ask for my transcripts, so it seems he's not working with me."

The trial court said, "I don't know if he's making a *Marsden* motion. He's got a complaint, but if it's a *Marsden*, I do have to handle that, for the record, so--" Eason's attorney said, "It's about [him] receiving some paperwork, and I'm making copies for him. I need to look at some redactions . . . there is some victims in this case."

Eason interjected, "I don't want him representing me for my life, sir. That's basically it." The trial court said, "Excuse me. I'm not asking you to speak right now. Don't disrespect me in this courtroom." Eason responded, "I'm not trying to disrespect you." The court said, "Well you just did because you opened your mouth and started arguing with your lawyer." Eason said nothing further.

Eason's attorney said, "I'll make the redactions and give him discovery, Your Honor." The trial court responded, "So noted. Thank you." The issue was not raised again.

## DISCUSSION

### *Sufficiency of Evidence of Asportation to Support the Kidnapping Conviction*

Appellants contend the movement of Yang was merely incidental to the commission of the robbery and therefore could not support the kidnapping convictions. (§ 209, subd. (b)(2); *People v. Martinez* (1999) 20 Cal.4th 225, 232 [aggravated kidnapping requires movement of the victim (1) that is not merely incidental to the commission of the underlying crime and (2) that increases the risk of harm to the victim over and above that necessarily present in the underlying crime].)

Sufficient evidence supports the jury's conclusion. To determine whether movement is merely incidental, a jury must consider the "scope and nature" of the movement, including the actual distance. (*People v. Vines* (2011) 51 Cal.4th 830, 870.) No minimum number of feet is required. (*Ibid.*) In determining whether the movement

4

increased the victim's risk of harm, the jury considers such factors as decreased likelihood of detection, danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes. (*People v. Martinez*, *supra*, 20 Cal.4th 225, 233; *People v. Daniels* (1969) 71 Cal.2d 1119, 1139.) The context of the environment in which the movement occurred is a factor. (*People v. Rayford* (1994) 9 Cal.4th 1, 12.) Substantially increased risk of psychological injury is sufficient, even where there is no increased risk of physical injury. (*People v. Tuan Van Nguyen* (2000) 22 Cal.4th 872, 874.)

Appellants moved Yang only six to nine feet, but that distance took him from inside a well-lit train car that was carrying four other men onto an unfamiliar train platform not as well lit and where there were fewer people. On the platform, appellants had the opportunity to throw Yang on the tracks, an additional crime for which they were convicted, demonstrating Yang's increased risk of physical harm. The open platform also provided appellants an opportunity to escape. Yang's risk of psychological injury also increased. Yang ended up lying on train tracks in an unfamiliar station late at night. None of this was necessary to accomplish a robbery that began, and could have been completed, on the train.

Appellants argue that movement from the enclosed train to the open platform did not increase the risk to Yang, because courts routinely find that movement from open to enclosed areas increases the risk of harm. (See *People v. Rayford*, *supra*, 9 Cal.4th 1, 12-14 [from parking lot to area behind wall]; *People v. Aguilar* (2004) 120 Cal.App.4th 1044, 1048 [from lit area to unlit area]; *People v. Jones* (1999) 75 Cal.App.4th 616, 629 [from parking lot into car]; *People v. Hill* (1971) 20 Cal.App.3d 1049, 1052-1053 [from parking lot into market]; *People v. Ellis* (1971) 15 Cal.App.3d 66, 73-74 [from street into apartment].) But each case must be independently considered in the totality of its circumstances. (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1152.) Sufficient evidence supports the jury's conclusion that the movement from train to platform increased Yang's risk of harm.

Appellants contend that the prosecution impermissibly changed theories on appeal because in the trial court it argued that Yang was removed from the train for the purposes of committing robbery whereas now it argues that the movement was not done to facilitate the robbery. The People are bound on appeal by their theory of the case at trial. (*People v. Green* (1980) 27 Cal.3d 1, 67 ["The fatal flaw in this 'continuous kidnapping' theory, however, is that it was simply not the theory on which the case was tried"], overruled on other grounds as stated in *People v. Morgan* (2007) 42 Cal.4th 593, 611.) The prosecution's positions are consistent. The prosecution argues here that the movement did not merely facilitate the robbery. At trial, the prosecutor argued that appellants formed the intent to rob Yang while they were still in the train (when they told him they were going to rob him) and that the movement to the platform was not merely incidental to the robbery because they could have robbed Yang on the train. She argued that the movement from train to platform increased the risk of physical harm to Yang as demonstrated when he was thrown onto the tracks, that his risk of emotional harm was also increased because Yang was not familiar with that train station and had no way home, and that the movement further increased appellants' opportunity for escape.

Sufficient evidence supports the jury's finding that the movement, although a brief distance, was not merely incidental to the robbery and substantially increased the risk of harm to Yang beyond that inherent in the robbery. The outcome is consistent with "'the primary purpose of [section 209] [which] is to impose harsher criminal sanctions to deter the carrying away of persons during the commission of a robbery in a manner which substantially increases the risk that someone will suffer grave bodily or psychic injury or even death.'" (*People v. Tuan Van Nguyen*, *supra*, 22 Cal.4th 872, 879, italics omitted.)

### *Attempted Robbery as Lesser-Included Offense to Robbery*

Appellants argue that the trial court should have instructed on attempted robbery because there was substantial evidence that Isaac attempted to take cash from Yang's front pocket but found none. (*People v. Breverman* (1998) 19 Cal.4th 142, 162

6

[sua sponte duty to instruct the jury on all theories of a lesser-included offense which find substantial support in the evidence]; *People v. Pham* (1993) 15 Cal.App.4th 61, 67 [attempted robbery is a lesser-included offense of robbery]; *People v. Nguyen* (2000) 24 Cal.4th 756, 762 ["tak[ing]" is an essential element of the crime of robbery].)

We agree the trial court should have instructed on attempted robbery because there was substantial evidence that could have supported a finding that appellants did not acquire dominion or control over any of Yang's property when they went through his pockets. (*People v. Pham*, *supra*, 15 Cal.App.4th 61, 67 [when there is substantial evidence that an element of the charged offense is missing, but that the accused is guilty of a lesser-included offense, the court must instruct upon the lesser-included offense].) Yang testified that appellants took about $300 in cash from his left front pocket. But other evidence could support a finding that the pocket was empty when they went through it. Yang testified that when he went to the bar with friends, he had "over $300" in cash. But he bought drinks for himself and for his friends and he did not know how much money he spent. He did not remember how much money he had when he left the bar. He was drunk and could not recall where he was from 9:00 p.m., when he left the bar, and 11:25 p.m., when he boarded the train. A surveillance video shows Yang playing dice, and handing cash to Eason, from which a jury could conclude Yang lost money gambling on the train. A video shows appellants going through Yang's pockets, but does not show whether they got anything. When the incident was over, Yang still had his cell phone and his wallet in his pockets, and some money in his wallet.

Appellants were not prejudiced by the absence of an instruction on attempted robbery. The failure to instruct sua sponte on a lesser-included offense in a noncapital case is "not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome." (*People v. Breverman*, *supra*, 19 Cal.4th 142, 165.) Yang's testimony that he had about $300 in his pocket was undisputed, as was his testimony that appellants said they were going to rob him. Appellants were in a position to see whether Yang still had loose cash in his

pockets. They watched him take "lots of cash" out of his pocket when he used the ticket machine and they knew how much of that he turned over when he played dice with them. They quickly went through his pockets and ran, suggesting they had found what they wanted. In view of all the evidence, it is not reasonably likely the jury would have elected the lesser crime if given the choice.

*Sufficiency of Evidence that Robbery Was "Perpetrated On" a Train*

*Within the Meaning of Section 212.5*

Appellants contend we must strike the finding that robbery was in the first degree because Yang was not "on" a train when he was robbed. We disagree. We conclude the robbery was "perpetrated on" a train within the meaning of section 212.5 when appellants formed the intent to rob and took forcible hold of the victim while they were still on the train but completed the robbery on the train platform.

Section 212.5 provides that a robbery "of any passenger which is perpetrated on" certain vehicles for hire, including trains and buses, is robbery in the first degree.[3] The term "perpetrated on" is not further defined by statute.

Yang testified that appellants took cash from his pockets on the platform, but that before they left the train Isaac said he was going to rob him and grabbed him. Yang said he struggled to get back on the train. He said he was afraid that if appellants pulled him off the train, they would rob him.

Appellants urge us to construe the word "on" narrowly, to require that every element of the robbery be completed while the victim remains on the vehicle, regardless of whether the perpetrator drags the victim from it. The fundamental purpose of statutory

---

[3] Section 212.5, subdivision (a) provides: "Every robbery of any person who is performing his or her duties as an operator of any bus, taxicab, cable car, streetcar, trackless trolley, or other vehicle, including a vehicle operated on stationary rails or on a track or rail suspended in the air, and used for the transportation of persons for hire, every robbery of any passenger which is perpetrated on any of these vehicles, and every robbery which is perpetrated in an inhabited dwelling house, a vessel . . . which is inhabited . . . , an inhabited floating home . . . , a trailer coach . . . which is inhabited, or the inhabited portion of any other building is robbery of the first degree."

8

construction is to ascertain the Legislature's intent. (*People v. Ledesma* (1997) 16 Cal.4th 90, 95.) "The first step in our analysis is to examine the actual words of the statute, giving to them a commonsense meaning." (*People v. Tuan Van Nguyen*, *supra*, 22 Cal.4th 872, 878.) If their meaning is unambiguous, there is no need for construction. (*People v. Zambia* (2011) 51 Cal.4th 965, 972.)

The term "perpetrated on" is ambiguous because one plausible meaning requires that every element of the offense be completed on the train, and another plausible meaning requires that only a substantial part of the robbery be completed on the train. We do not consider a single word in isolation, but "focus more broadly on the language, context, and history of the statute." (*People v. Ledesma*, *supra*, 16 Cal.4th 90, 95.) The intent prevails over the letter of the statute, and the letter will, if possible, be so read as to conform to the spirit of the act. (*Ibid.*)

The crime of robbery is a continuing offense that begins from the time of the original taking until the robbery reaches a place of relative safety. (*People v. Anderson* (2011) 51 Cal.4th 989, 994.) The elements are: (1) felonious taking (with the intent to steal or feloniously deprive the owner of his property), (2) of personal property in the possession of another, from his person or immediate presence, (3) against his will, (4) accomplished by means of force or fear. (*People v. Bacon* (2010) 50 Cal.4th 1082, 1117.) Here, both the intent and force elements were satisfied while Yang was still on the train when Isaac expressed his intent to rob Yang and grabbed him. That the robbery was completed on the train platform did not reduce Yang's vulnerability or appellants' culpability. To exclude the robbery from the reach of the statute would produce an absurd result.

Construction of the term "perpetrated on" to include this robbery furthers the historic legislative purpose of the first degree robbery statute, which is to increase robbery sentences commensurate with increased victim vulnerability. (See *People v. McDade* (1991) 230 Cal.App.3d 118, 127 [construing "dwelling" to include jail cell furthers purpose of protecting vulnerable victims].) "Although intending to deter both

9

theft and personal harm, robbery legislation emphasizes personal protection. Implementing its intent to protect robbery victims, the Legislature has developed a statutory scheme increasing sentences for increased victim vulnerability." (*Ibid.*) Like the bus passenger who appellants robbed previously, Yang's status as a transit passenger made him especially vulnerable to robbery and personal harm. Yang did not lose this vulnerability when Isaac pulled him from the train.

*Evidence of the Prior Robbery of a Bus Passenger*

We reject appellants' contention that the trial court should have excluded evidence of their prior crime, robbery of a bus passenger. We further reject Isaac's contention that his counsel was ineffective because he did not ask the court to instruct the jury that the evidence of the prior crime could only be considered against Eason.

The evidence was admissible against both appellants to prove they intended to rob Yang and to prove a common plan. (Evid. Code, § 1101, subd. (b).) The trial court admitted it for both purposes; the prosecutor argued in closing that it was relevant to prove intent. Evidence of the prior crime was admissible to prove intent because it was sufficiently similar to support an inference that appellants probably harbored the same intent in each instance. (*People v. Soper* (2009) 45 Cal.4th 759, 776.) It was also admissible to prove common plan because there was """such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.""" (*Id.* at p. 776, fn. 8.) In both robberies, appellants acted together to rob a lone transit passenger at night after telling him they were going to rob him.

The trial court acted within its discretion when it determined that the evidence was not unduly prejudicial. (Evid. Code, § 352.) The prior robbery was not violent and the victim's testimony was brief. The defense theory was that this was a spontaneous assault with no intent to take property. The evidence was highly probative to disprove that theory.

10

Isaac has not established his claim or ineffective assistance of counsel because failure to request a limiting instruction was not deficient performance. (*Strickland v. Washington* (1984) 466 U.S. 668, 694; *People v. Prieto* (2003) [decision to forgo meritless objection not deficient performance].)  Although Isaac was not convicted of the prior robbery, conviction is not a prerequisite for admission under Evidence Code section 1101, subdivision (b).  The bus passenger identified Isaac in court and testified that Isaac's presence during the robbery added to his fear.  He thought that if he "tried to do something about it, [he] would--[he] was fearing that they both would try to jump [him]."  Appellants acted as a team in both incidents.  Isaac's presence and cooperation with Eason in the prior robbery rendered evidence of the incident admissible against him.

### *Absence of Marsden Hearing After Eason's Request to Replace Counsel*

We agree that the trial court should have conducted a *Marsden* hearing after Eason requested substitute counsel.  Instead, it silenced him.  We provisionally reverse because the record does not disclose the reasons for Eason's request and therefore does not show beyond a reasonable doubt that the error was harmless.

"[A]t any time during criminal proceedings, if a defendant requests substitute counsel, the trial court is obligated . . . to give the defendant an opportunity to state any grounds for dissatisfaction with the current appointed attorney."  (*People v. Sanchez* (2011) 53 Cal.4th 80, 90, citing *Marsden*, *supra*, 2 Cal.3d 118, 126.)  "[I]f the defendant makes a showing during a *Marsden* hearing that his right to counsel has been ""substantially impaired"" [citation], substitute counsel must be appointed as attorney of record for all purposes."  (*Sanchez*, at p. 90.)

Eason informed the trial court that he wanted substitute counsel when he said, "My lawyer, he's not working--He ain't been working with me, and I would like to have some type of different lawyer," because counsel did not give him his "transcripts."  When a defendant requests new appointed counsel on the grounds of inadequate representation, the court must allow the defendant to explain the basis for his contentions and describe specific instances of ineffective representation. (*Marsden*, *supra*, 2 Cal.3d

11

118.)  The court acknowledged that "if it's a *Marsden*, I do have to handle that," but did not conduct a hearing.

The People contend that Eason's only articulated complaint was resolved when counsel said Eason would redact and deliver the transcripts, and contend that Eason should have filed a written request articulating any other reasons.  The record demonstrates that effort would probably have been futile.  When counsel said he would provide the transcripts, Eason said, "I don't want him representing me for my life, sir.  That's basically it."  He did not say that counsel was incapable of effectively assisting him, but he had no opportunity to do so.

The trial court silenced Eason when it responded, "Excuse me.  I'm not asking you to speak right now. Don't disrespect me in this courtroom."  The record does not reflect any disruptive behavior or disrespect on the part of Eason.  The trial court should have allowed him at sometime in the proceedings to explain the basis for his request or describe specific instances of ineffective representation.

Erroneous refusal to inquire into the basis for a *Marsden* motion requires reversal unless the record shows beyond a reasonable doubt that the error was harmless.  (*Marsden*, *supra*, 2 Cal.3d 118, 126, citing *Chapman v. California* (1967) 386 U.S. 18, 24.)  "[W]e simply cannot determine from the silent record before us whether further inquiry would have led to a different result." (*People v. Reed* (2010) 183 Cal.App.4th 1137, 1148-1149; *id.* at p. 1141 [refusal to inquire into reasons for postconviction request to "file a motion for incompetence of counsel" required reversal and remand for *Marsden* hearing]; see also *People v. Eastman* (2007) 146 Cal.App.4th 688, 697 [refusal to inquire into reasons for request to withdraw plea based on ineffective assistance of counsel required reversal and remand for *Marsden* hearing].)

*Stay of Robbery Sentences Pursuant to Section 654 as to Isaac and Eason*

Appellants' robbery sentences must be stayed pursuant to section 654.  The same is not true for the assault sentences.

The parties agree that the trial court should have stayed the robbery sentences pursuant to section 654. Section 654 prohibits punishment for kidnapping for robbery and robbery itself. (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1369.)

But an assault that is committed when a victim is already complying or attempting to escape a robbery may be punished separately, because the intent and objectives are distinct. (*People v. Watts* (1999) 76 Cal.App.4th 1250, 1265; *People v. Coleman* (1989) 48 Cal.3d 112, 162-163.) Here, appellants threw Yang onto the tracks after they took cash. The intent and objective of the assault were distinct from the robbery and the crimes may be punished separately. Multiple criminal objectives may be punished separately even though they share common acts or are parts of an otherwise indivisible course of conduct. (*People v. Douglas* (1995) 39 Cal.App.4th 1385, 1393.)

*Fee Assessments as to Isaac and Eason*

We modify the judgment to reflect the correct mandatory statutory fees. (*People v. Woods* (2010) 191 Cal.App.4th 269, 274-275.) Appellants were convicted of three felonies each. The trial court should have imposed upon each of them a court operations assessment of $120 ($40 for each felony) (§ 1465.8, subd. (a)(1)), and a court facilities funding assessment in the amount of $90 ($30 for each felony) (Gov. Code, § 70373, subd. (a)(1)). The trial court incorrectly imposed a $240 "court security fee" upon each defendant for each count and a single $30 "court security fee" upon each defendant.

*Eason's Total Determinate Sentence*

The trial court correctly pronounced the determinate portion of each sentence, but miscalculated the total as 31 years. If the trial court reinstates judgment on remand, it should correctly calculate the total determinate term.

*"Stay" of Eason's Enhancement for Prior Prison Terms*

We remand to the trial court to determine whether to impose or strike the enhancement on Eason's sentence for his prior prison terms pursuant to section 667.5, subdivision (b). The abstract of judgment states that the trial court imposed the

13

enhancement. But the court pronounced that it would stay the enhancement. The trial court did not have the authority to stay the enhancement. (*People v. Langston* (2004) 33 Cal.4th 1237, 1241; *People v. Jones* (1992) 8 Cal.App.4th 756, 758.) It was obligated to either impose or strike the enhancement. Unlike the trial court in *Jones*, the trial court here did not indicate whether it would want Eason to serve the additional time if it did not have the choice of staying the enhancement.

*Clerical Error in Abstract of Judgment as to Eason*

The abstract of judgment contains clerical errors with respect to Eason's robbery and assault terms. It should reflect that the trial court doubled Eason's sentences for robbery and assault to 12 and 2 years, respectively. The abstract omits the doubling. (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385 [court's oral pronouncement of judgment controls over discrepancy in the abstract of judgment].)

DISPOSITION

We modify the judgment as to Isaac to stay his sentence for robbery pursuant to section 654 and to correct the mandatory fee assessments to impose a court operations assessment of $120 and a court facilities funding assessment in the amount of $90. (§ 1465.8, subd. (a)(1)); Gov. Code, § 70373, subd. (a)(1).) The superior court clerk is directed to prepare an amended abstract of judgment as to Isaac which accurately reflects the modified judgment and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation. In all other respects, we affirm the judgment as to Isaac.

We reverse the judgment as to Eason with directions to the trial court to inquire into the reasons for Eason's pre-trial claim of ineffective assistance of counsel and to determine whether good cause exists to appoint new counsel. If good cause exists, the trial court shall appoint new counsel and entertain such motions as newly appointed counsel may make. If good cause does not exist to appoint new counsel, the trial court shall reinstate the judgment as to Eason.

14

If the trial court reinstates the judgment as to Eason, we modify the judgment to (1) stay Eason's sentence for robbery pursuant to section 654; (2) reflect whether Eason's sentence enhancement for his prior prison terms is imposed or stricken; (3) correct the mandatory fee assessments to impose upon Eason a court operations assessment of $120 and a court facilities funding assessment in the amount of $90 (§ 1465.8, subd. (a)(1); Gov. Code, § 70373, subd. (a)(1)); and (4) reflect the correct calculation of Eason's total determinate term. The superior court clerk is directed to prepare an amended abstract of judgment as to Eason which accurately reflects the modified judgment and reflects that the trial court doubled Eason's sentences for robbery and assault to 12 and 2 years, respectively; and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.


15

Arthur M. Lew, Judge

Superior Court County of Los Angeles

_____

Danalynn Pritz, under appointment by the Court of Appeal, for Defendant and Appellant Alexander Quinn Isaac.

Marilyn G. Burkhardt, under appointment by the Court of Appeal, for Defendant and Appellant Jonathan Victor Eason.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Idan Ivri, Deputy Attorney General, for Plaintiff and Respondent.