Filed 10/28/14  P. v. Avery CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B252897 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA121558) |
| v. | |
| RONALD DEMETRES AVERY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael A. Cowell, Judge.  Modified in part and remanded with directions.

Benjamin Owens, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Jonathan J. Kline and Jonathan M. Krauss, Deputy Attorneys General, for Plaintiff and Respondent.

## I.  INTRODUCTION

A jury convicted defendant, Ronald Demetres Avery, of two counts each of kidnapping to commit robbery and second degree robbery.  (Pen. Code, [1] §§ 209, subd. (b)(1), 211.)  The trial court found defendant had sustained two prior convictions within the meaning of sections 667, subdivisions (a)(1) and (b) through (i), and 1170.12.  Defendant was sentenced to 60 years to life in state prison.  We modify the judgment.  Upon remittitur issuance, there will be additional sentencing actions that must be taken.

## II.  THE EVIDENCE

Defendant and an accomplice accosted two Lowes Hardware Store employees— Kevin Hopp and Lindsay Noordman—as they prepared to unlocked the exterior doors to the business.  It was 5:15 a.m.  The building was located on Carmenita Road near Interstate 5 in Norwalk.  It was adjacent to a public parking lot.  Ms. Noordman testified defendant's accomplice forced her at gunpoint up against an exterior wall and took her cellular telephone.  Defendant ordered Mr. Hopp to:  unlock and open the exterior doors; open a second set of doors; disarm the alarm system; and relock the exterior doors from the inside.  Defendant told Mr. Hopp to, "[G]o to the cash room."  Defendant, the unidentified accomplice and the two victims continued into the store.  They walked around the return cash registers and the customer service desk and into the manager's office.  The distance consisted of approximately 100 to 125 feet from the front door.  A locked door in the manager's office led to the vault.  Defendant's accomplice, who was armed with the gun, remained with Ms. Noordman in the manager's office.  Mr. Hopp, accompanied by defendant, unlocked the door to the vault and deactivated a second alarm.  The vault was windowless.  There were no emergency exits.  Defendant ordered Mr. Hopp to open the two safes in the vault.  Each safe had a time-delayed lock.

---

[1]      Future statutory references are to the Penal Code.

Defendant stood in the doorway between the manager's office and the vault. Defendant threatened to kill Mr. Hopp. Mr. Hopp was told he would be killed if he was lying about the time-delayed locks. The unidentified armed accomplice and Ms. Noordman were directed by defendant to retrieve bags from the customer service area. Mr. Hopp removed cash from the safes and, at defendant's direction, placed the money in a trash can. Defendant's accomplice pushed Ms. Noordman into the vault. Defendant ripped the telephone out of the wall. Defendant then took Mr. Hopp's cellular telephone and store keys and ordered the two victims to stay in the vault. Defendant told the victims he would shoot them if they left the room. Defendant shut the vault door as he exited. Ms. Noordman testified, "[T]hinking they were locking us in they pulled the wires from the phone in the [vault] and shut the door behind them." But the door, which was locked from outside, could be opened from inside the vault. Mr. Hopp was in the vault with defendant for about 15 minutes.

## III. DISCUSSION

### A. There Was Sufficient Evidence Of Kidnapping For Robbery

Defendant was convicted of kidnapping for robbery in violation of section 209, subdivision (b)(1). (*People v. Burney* (2009) 47 Cal.4th 203, 255; *People v. James* (2007) 148 Cal.App.4th 446, 452.) Section 209, subdivision (b)(2) defines the asportation element of kidnapping for robbery: "This subdivision shall only apply if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended [robbery]." (*People v. Vines* (2011) 51 Cal.4th 830, 869-870 & fn. 20; *People v. Burney, supra,* 47 Cal.4th at p. 255.)

Defendant challenges the sufficiency of the evidence to prove kidnapping for robbery. Defendant contends the victims' movement was merely incidental to the robberies and did not increase the risk of harm to them over that inherent in the

3

underlying crimes. We conclude a reasonable jury could have found the evidence was sufficient.

Our Supreme Court discussed the asportation element of kidnapping for robbery in *People v. Vines, supra,* 51 Cal.4th at pages 869-870: "[K]idnapping for robbery . . . require[s] movement of the victim that (1) was not merely incidental to the commission of the robbery, and (2) . . . increased the risk of harm over and above that necessarily present in the crime of robbery itself. [Citations.] These two elements are not mutually exclusive but are interrelated. [Citations.] [¶] With regard to the first prong, the jury considers the 'scope and nature' of the movement, which includes the actual distance a victim is moved. [Citations.] There is, however, no minimum distance a defendant must move a victim to satisfy the first prong. [Citations.] [¶] '"The second prong . . . refers to whether the movement subjects the victim to a substantial increase in risk of harm above and beyond that inherent in the [robbery]. [Citations.] This includes consideration of such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes. [Citations.] The fact that these dangers do not in fact materialize does not, of course, mean that the risk of harm was not increased."' [Citations.]" Further, "[E]ach case must be considered in the context of the totality of its circumstances." (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1152; accord, *People v. Corcoran* (2006) 143 Cal.App.4th 272, 279.) We view the evidence in the light most favorable to the verdict and ask whether any rational trier of fact could have found the necessary elements of the crime beyond a reasonable doubt. (*People v. Dominguez, supra,* 39 Cal.4th at p. 1153; *People v. Curry* (2007) 158 Cal.App.4th 766, 778.) We presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the trial evidence. (*People v. Vines, supra,* 51 Cal.4th at p. 869; *People v. Curry, supra,* 158 Cal.App.4th at p. 778.)

The evidence was sufficient for the jury to find defendant committed two counts of kidnapping for the purpose of robbery. Defendant and an unidentified accomplice moved the victims from outside the hardware store to inside the locked building. Outside

the hardware store was a relatively safe location exposed to passersby. It was adjacent to an interstate freeway, a surface street and a public parking lot. The victims were locked inside the building. They were then forced to walk around the cash registers and the customer service center, through the manager's office and into a windowless, exitless vault. The distance from the front door to the manager's office was approximately 100 to 125 feet. Ms. Noordman was additionally forced to move from the manager's office to the customer service area and back. She was subsequently forcibly moved from the manager's office into the vault. The likelihood defendant and the unidentified accomplice would be detected was substantially reduced once they were inside the building and within an interior office space. The two perpetrators and the two victims were sufficiently secluded that additional crimes could easily have been committed against Mr. Hopp and Ms. Noordman. Escaping would have necessitated overcoming two men, one of whom was armed with a gun. After accomplishing that highly hazardous task, the victims would have had to make their way back out through the manager's office. The two victims would then have had to flee around the customer service and cash register areas and through two doors including a locked door. The jury could reasonably conclude the scope and nature of this movement was more than merely incidental to the commission of the robbery. (See *People v. Vines, supra,* 51 Cal.4th at pp. 870-871; *People v. Corcoran, supra,* 143 Cal.App.4th at pp. 276, 279-280.) A jury could further conclude the movement increased the *risk* of harm to the victims. (See *People v. James* (2007) 148 Cal.App.4th 446, 456-458; *People v. Hill* (1971) 20 Cal.App.3d 1049, 1052-1053.)

## B. Sentencing

### 1. Section 654, subdivision (a)

The trial court declined to impose but stayed the second degree robbery sentences, counts 3 and 4, pursuant to section 654, subdivision (a). This was error. The trial court

was required to first impose a sentence on each count, which involves selecting a term, and then stay execution of the sentences. (*People v. Crabtree* (2009) 169 Cal.App.4th 1293, 1327; see *People v. Jones* (2012) 54 Cal.4th 350, 353 [the accepted procedure is to sentence for each count then stay execution]; *People v. Jenkins* (1965) 231 Cal.App.2d 928, 934-935 [same].) The counts 3 and 4 sentences must be reversed and the matter remanded with directions for the trial court to correct this error. (*People v. Crabtree, supra,* 169 Cal.App.4th at p. 1327; *People v. Price* (1986) 184 Cal.App.3d 1405, 1411 ["an incorrect application of section 654 produces an unauthorized sentence which may be rectified on remand"].)

### 2. Section 667, subdivision (a)(1) enhancements

As noted above, the trial court found defendant had sustained two prior serious felony convictions within the meaning of section 667, subdivision (a)(1). Each such conviction subjected defendant to a five-year enhancement. The trial court imposed two section 667, subdivision (a)(1) enhancements for a total of 10 years. But the prior serious felony conviction enhancements applied not just once but to each indeterminate sentence. (*People v. Williams* (2004) 34 Cal.4th 397, 400, 404-405; *People v. Thomas* (2013) 214 Cal.App.4th 636, 640.) The judgment must be modified and the abstract of judgment amended to so reflect.

### 3. Parole revocation restitution fine

The trial court orally imposed a $200 restitution fine (§ 1202.4, subd. (b)) but failed to impose a parole revocation restitution fine (§ 1202.45, subd. (a)). This error is correctable on appeal despite the prosecutor's failure to object in the trial court. (*People v. Smith* (2001) 24 Cal.4th 849, 851-854; *People v. Rodriquez* (2000) 80 Cal.App.4th 372, 376; see *People v. Cropsey* (2010) 184 Cal.App.4th 961, 965, fn. 3; *People v. Vazquez* (2009) 178 Cal.App.4th 347, 355-356.) The oral pronouncement of judgment

6

must be modified to impose a $200 parole revocation restitution fine.  (*People v. Rodriguez, supra,* 80 Cal.App.4th at p. 376; *People v. Terrell* (1999) 69 Cal.App.4th 1246, 1255-1256.)  The abstract of judgment is correct in this regard and need not be amended.

### 4.  Court facilities and operations assessments

The trial court orally imposed $30 court facilities (Gov. Code, § 70373, subd. (a)(1)) and $40 court operations assessments (§ 1465.8, subd. (a)(1)) as to each count. The abstract of judgment reflects $60 in court facilities and $80 in court operations assessments.  However, the assessments apply to each count including the stayed counts. (*People v. Sencion* (2012) 211 Cal.App.4th 480, 484-485; *People v. Crittle* (2007) 154 Cal.App.4th 368, 370-371.)  Therefore, the abstract of judgment must be amended to reflect $120 in court facilities assessments and $160 in court operations assessments.

### IV.  DISPOSITION

The judgment is modified to impose two Penal Code section 667, subdivision (a)(1) five-year prior felony conviction enhancements as to each indeterminate sentence. The oral pronouncement of judgment is modified to impose a $200 parole revocation restitution fine under Penal Code section 1202.45.  Upon remittitur issuance, the trial court must select a term and sentence defendant on counts 3 and 4 before it stays execution of those sentences.  The abstract of judgment must be amended to reflect:  the sentences imposed on counts 3 and 4; two Penal Code section 667, subdivision (a)(1) five-year prior felony conviction enhancements as to each indeterminate sentence; and $120 in court facilities assessments (Gov. Code, § 70373, subd. (a)(1)) and $160 in court

7

operations assessments.  (Pen. Code, § 1465.8, subd. (a)(1).)  The clerk of the superior court is to deliver a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P. J.


We concur:


KRIEGLER, J.


GOODMAN, J.[*]


---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.